No. 22-1096

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

STATE OF DELAWARE,
Plaintiff/Appellee,

v.

BP AMERICA, INC., *et al.*,
Defendants/Appellants.

On Appeal from the United States District Court for the
District of Delaware, No. 20-cv-1429,
The Honorable Leonard P. Stark, Judge

**AMICUS BRIEF OF INDIANA AND SIXTEEN OTHER STATES
IN SUPPORT OF APPELLANTS AND REVERSAL**

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana
THOMAS M. FISHER
Solicitor General
JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

*Counsel for* Amici *States*
*Additional counsel listed with signature block*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

INTEREST OF *AMICI* STATES ................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................ 1

ARGUMENT ............................................................................................ 4

I.      Federal Law Must Govern Any Common-Law Claims to
        Abate Global Climate Change .......................................................... 4

II.     Because the State's Public-Nuisance Claim Is Governed by
        Federal Common Law, It Necessarily Arises under Federal
        Law, and Removal Is Therefore Proper ........................................ 13

CONCLUSION ........................................................................................ 24

ADDITIONAL COUNSEL ...................................................................... 25

CERTIFICATE OF COMPLIANCE ....................................................... 26

CERTIFICATE OF SERVICE ................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Am. Elec. Power Co., Inc. v. Connecticut,*
  564 U.S. 410 (2011)................................................................8

*Avco Corp. v. Aero Lodge No. 735,*
  390 U.S. 557 (1968)..............................................................16

*B.P. P.L.C. v. Mayor & City Council of Baltimore,*
  141 S. Ct. 1532 (2021)..........................................................12

*Banco Nacional de Cuba v. Sabbatino,*
  376 U.S. 398 (1964).....................................................5, 8, 20

*Boyle v. United Techs. Corp.,*
  487 U.S. 500 (1988)........................................................ *passim*

*Caterpillar Inc. v. Williams,*
  482 U.S. 386 (1987)..............................................................15

*Caudill v. Blue Cross & Blue Shield of N.C.,*
  999 F.2d 74 (4th Cir. 1993)............................................16, 17

*City of Hoboken v. Exxon Mobil Corp.,*
  No. 21-2728 (3d. Cir.)..........................................................12

*City of New York v. Chevron Corp.,*
  993 F.3d 81 (2d Cir. 2021) ..............................................17, 18

*Clearfield Tr. Co. v. United States,*
  318 U.S. 363 (1943)................................................................5

*County of San Mateo v. Chevron Corp.,*
  960 F.3d 586 (9th Cir. 2020)............................................12, 13

*Erie R.R. Co. v. Tompkins,*
  304 U.S. 64 (1938)..............................................................4, 6

*Federated Dep't Stores, Inc. v. Moitie,*
  452 U.S. 394 (1981)........................................................16, 20

## CASES [CONT'D]

*First Pa. Bank, N.A. v. E. Airlines, Inc.*,
   731 F.2d 1113 (3d Cir. 1984) ............................................ 20

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*
   *for S. Cal.*,
   463 U.S. 1 (1983) ............................................................ 15

*Hinderlider v. La Plata River Co.*,
   304 U.S. 92 (1938) .......................................................... 5, 7

*Home Depot U.S.A., Inc. v. Jackson*,
   139 S. Ct. 1743 (2019) ............................................ 3, 14, 21

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972) ................................................... *passim*

*Jarbough v. Attorney General*,
   483 F.3d 184 (3d Cir. 2007) ........................................... 19

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005) .......................................................... 2

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
   471 U.S. 845 (1985) ............................................. 13, 14, 18

*New SD, Inc. v. Rockwell Int'l Corp.*,
   79 F.3d 953 (9th Cir. 1996) ........................................... 17

*Oneida Indian Nation of N.Y. State v. Oneida County*,
   464 F.2d 916 (2d Cir. 1972) ........................................... 22

*Oneida Indian Nation of New York State v. Oneida County*,
   414 U.S. 661 (1974) ................................................... 22, 23

*Rivet v. Regions Bank of La.*,
   522 U.S. 470 (1998) ........................................................ 15

*Sam L. Majors Jewelers v. ABX, Inc.*,
   117 F.3d 922 (5th Cir. 1997) ......................................... 17

CASES [CONT'D]

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981) ................................................................. 6

*Texas v. Pankey*,
   441 F.2d 236 (10th Cir. 1971) ............................................... 7

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
   474 F.3d 379 (7th Cir. 2007) .............................................. 19

STATUTES

28 U.S.C. § 1331 ............................................................. 13, 14

28 U.S.C. § 1441 ................................................................... 2

OTHER AUTHORITIES

14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and
   Procedure* § 3722 (1976) .............................................. 16, 20

14C Wright & Miller, *Federal Practice and Procedure:
   Jurisdiction* § 3722.1 (rev. 4th ed. 2020) ........................... 19

19 Charles Alan Wright & Arthur R. Miller, *Federal Practice
   and Procedure* § 4514 (3d ed. 2021) .................................... 14

Henry J. Friendly, *In Praise of* Erie—*and of the New Federal
   Common Law*, 39 N.Y.U. L. Rev. 383 (1964) .................................. 6, 8

iv

## INTEREST OF *AMICI* STATES

The States of Indiana, Alabama, Alaska, Arkansas, Georgia, Kansas, Kentucky, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, Virginia, and Wyoming respectfully submit this brief as *amici curiae* in support of the defendant energy producers. Federal law entitles defendants to remove this case to federal court and thereby prevent a state court from resolving a common-law claim expressly premised on *global* climate change. *Amici* States urge this Court to reverse the district court's remand order and thus ensure that one State's courts cannot dictate global climate change policy to the rest of the country.

## SUMMARY OF THE ARGUMENT

Delaware seeks judicial resolution of one of the most complicated and contentious issues confronting policymakers today—global climate change. Delaware demands abatement of injuries caused by global climate change, which Delaware alleges adversely affects the climate in the State by accelerating sea level rises, increasing extreme weather events, adding to ocean acidification, and elevating average air temperature. Joint App'x Vol. III, Complaint 247–48, ¶¶ 1–2. Yet this case takes aim

at just a handful of companies who purportedly launched a decades-long disinformation campaign to mislead the public and consumers about climate change—in particular its likely impact and its nexus with fossil fuels. *See id.* at 251, ¶ 8; *id.* Vol. I, Memorandum Opinion 29–30 n.2.

Delaware's factual theory is that (1) Defendants' misrepresentation of their fossil fuel products (2) caused increased consumption of fossil fuels around the world, which (3) led to deleterious environmental effects in Delaware. *See id.* Vol. I, Mem. Op. 30 n.3. Its legal theories sound in 1) negligent failure to warn; 2) trespass; 3) violations of the Delaware Consumer Fraud Act; and 4) public nuisance. *Id.* at 29. Crucially, *federal* law squarely vests defendants with a right to have Delaware's expansive public-nuisance claim heard by a *federal* court.

For more than 230 years, federal law has, in certain circumstances, "grant[ed] defendants a right to a federal forum." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137 (2005). Today, the general removal statute, 28 U.S.C. § 1441, entitles a defendant to remove a case filed in state court if the state-court "action could have been brought originally in federal court"—such as when the case "raises claims arising under federal law"

under the federal-question statute. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019).

Here the defendant energy producers were entitled to remove the case because Delaware's common-law public-nuisance claim necessarily arises under federal law. The Supreme Court has long held that federal common law must govern common-law claims concerning interstate pollution, *see Illinois v. City of Milwaukee*, 406 U.S. 91, 103 (1972), and Delaware's Complaint makes unequivocally clear that, at its core, this action pertains not merely to *interstate* air pollution but to *international* air pollution and the corresponding "catastrophic" "climate change impacts." Joint App'x Vol. III, Compl. 247, ¶ 1.

Although Delaware argues that this lawsuit does *not* "seek to limit the extraction of fossil fuels or otherwise regulate greenhouse gas emissions," *id.* Vol. VI, Opening Brief in Support of Motion to Remand to State Court 1088, its prayer for relief with respect to the public-nuisance claim plainly "seeks an order that . . . *enjoins* Fossil Fuel Defendants from creating future common-law nuisance." *Id.* Vol. III, Compl. 454, ¶ 263 (emphasis added). Thus, Delaware effectively asks courts to fashion rules of

decision assigning liability for global climate change—an incredibly complex, value-laden question that affects every State and every citizen in the country. Accordingly, the claim *necessarily* arises under federal common law, and the State cannot evade federal-court jurisdiction by merely affixing a state-law label to what is in *substance* a federal-law claim.

The district court's contrary conclusion not only contravenes binding precedent, but also threatens to give Delaware state courts freewheeling power to set climate-change policy for the entire country. Such a result excludes other States from the climate-change policymaking process and threatens to undermine the cooperative federalism model our country has long used to address environmental problems. This Court should reverse the decision below.

## ARGUMENT

## I.    Federal Law Must Govern Any Common-Law Claims to Abate Global Climate Change

1.    In *Erie Railroad Co. v. Tompkins*, the Supreme Court recognized that federal courts have no power to supplant state common law with "federal *general* common law," 304 U.S. 64, 78 (1938) (emphasis added). The Court soon made it clear, however, that this principle does

not prevent *specialized* federal common law from exclusively governing areas that implicate unique federal interests. "[I]n an opinion handed down the same day as *Erie* and by the same author, Mr. Justice Brandeis, the Court declared, 'For whether the water of an interstate stream must be apportioned between the two States is a question of "federal common law" . . . .'" *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964) (quoting *Hinderlider v. La Plata River Co.*, 304 U.S. 92, 110 (1938)).

Indeed, less than five years after *Erie*, the Court issued its seminal decision in *Clearfield Trust Co. v. United States*, holding that federal common law governs the "rights and duties of the United States on commercial paper which it issues." 318 U.S. 363, 366 (1943). And in the nearly eighty years since *Clearfield*, the Court has held that federal common law necessarily and exclusively governs disputes in numerous other areas as well. *See, e.g.*, *Banco Nacional de Cuba,* 376 U.S. at 425–27 (holding, in light of "the potential dangers were Erie extended to legal problems affecting international relations," that "the scope of the act of state doctrine must be determined according to federal law"); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (holding that the unique

federal concerns pertaining to military procurement and the potential for significant conflicts with federal policy mean that federal common law, not state common law, must govern design-defect claims brought against manufacturers of military equipment).

Accordingly, the "clarion yet careful pronouncement of *Erie*, 'There is no federal general common law,' opened the way to what, for want of a better term, we may call specialized federal common law." Henry J. Friendly, *In Praise of* Erie—*and of the New Federal Common Law*, 39 N.Y.U. L. Rev. 383, 405 (1964) (quoting *Erie*, 304 U.S. at 78). And it is now firmly established that this specialized federal common law applies to the "few areas, involving 'uniquely federal interests,'" that "are so committed by the Constitution and laws of the United States to federal control" that they must be "governed exclusively by federal law." *Boyle*, 487 U.S. at 504 (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)).

2.    Of particular relevance here, for nearly half a century the Supreme Court has held that one area of "uniquely federal interest" to which federal common law must apply is *interstate pollution*: "When we deal with air and water in their ambient or interstate aspects, there is a

federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 103 (1972). In *Illinois*, the Court considered "whether pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a) [the federal-question statute]." *Id.* at 99. And, crucially, the Court held "that it does." *Id.*

The Court explained that an earlier Tenth Circuit decision had "stated the controlling principle": "'the ecological rights of a State in the improper impairment of them from sources outside the State's own territory . . . [is] a matter having basis and standard in federal common law and so directly constituting a question arising under the laws of the United States.'" *Id.* at 99–100 (quoting *Texas v. Pankey*, 441 F.2d 236, 240 (10th Cir. 1971)).

The Court further analogized interstate-pollution disputes to those "concerning interstate waters," which *Hinderlider* more than three decades prior had "'recognized as presenting federal questions.'" *Id.* at 105 (quoting *Hinderlider*, 304 U.S. at 110). The result: A common-law claim that arises from a dispute over interstate pollution implicates "an overriding federal interest in the need for a uniform rule of decision" and "touches basic interests of federalism," thereby conferring jurisdiction on

federal courts to "fashion[] federal common law." *Id.* at 105 n.6 (citing *Banco Nacional de Cuba*, 376 U.S. at 421–27).

More recently, in *American Electric Power Co., Inc. v. Connecticut*, the Supreme Court again reiterated "'[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law.'" 564 U.S. 410, 421 (2011) (quoting *Illinois*, 406 U.S. at 103). There the Court explained that specialized federal common law governs "'subjects within national legislative power where Congress has so directed' or where the basic scheme of the Constitution so demands." *Id.* (quoting Friendly, *supra*, at 408 n.119, 421–22). Because the "'national legislative power'" includes the power to adopt "[e]nvironmental protection" laws addressing interstate pollution, federal courts can, "if necessary, even 'fashion federal law'" in this area. *Id.* (quoting Friendly, *supra*, at 421–22).

In sum, the Supreme Court has repeatedly held that federal common law governs disputes involving air in its "'ambient or interstate aspects.'" *Id.* at 421 (quoting *Illinois*, 406 U.S. at 103). Federal common law therefore must apply to Delaware's public-nuisance claim in this case.

Delaware's public-nuisance claim seeks redress for injuries alleg-edly caused by Defendants' actions "[a]ffirmatively and knowingly pro-moting the sale and use of fossil fuel products" that were known to "cause or exacerbate global warming and related consequences," which included, but was not limited to, "sea level rise, drought, extreme precipitation events, and extreme heat events." Joint App'x Vol. III, Compl. 205, ¶ 257(b). Delaware requests an order enjoining Defendants from "creat-ing future common-law nuisance." *Id.* at 208, ¶ 263. Although it insisted during oral argument in the district court that it was "in no way *directly* asking a court to limit, modify, alter, cease, [or] in any way hinder the actual exploration, production, sale, [and] consumption of fossil fuels," and insisted that "any injunctive relief" would instead "focus on the ve-racity of marketing and other public communications," Joint App'x Vol. I, Mem. Op. 31, n.4 (emphasis added), Delaware nonetheless seeks to abate the effects of global climate change via public-nuisance doctrine, which, owing to the subject matter, must be a federal claim.

In its complaint, Delaware alleges that the defendant energy pro-ducers "created" or "contributed to . . . the public nuisance" by (1) "[c]on-trolling every step of the fossil fuel product supply chain, including the

extraction of raw fossil fuel products, . . . refining and marketing . . ., and [placing] those fossil fuel products into the stream of commerce"; (2) "promoting the sale and use of fossil fuel products"; (3) "concealing the hazards that . . . would result from the normal use of their fossil fuel products by misrepresenting and casting doubt on the integrity of scientific information related to climate change"; (4) "[d]isseminating and funding the dissemination of information intended to mislead customers, consumers, and regulators regarding known and foreseeable risk of climate change and its consequences"; and (5) "campaigning against the regulation of their fossil fuel products . . . and failing to warn the public about the hazards associated with the use of fossil fuel products." *Id.* Vol. III, Compl. 451–52, ¶ 257.

The "public nuisance" from which Delaware seeks relief, however, is global climate change and its related consequences. *See id.* at 450–454, ¶¶ 255–261. Indeed, the first sentence of the complaint reveals that the conduct Delaware is concerned about is "unrestricted production and use of fossil fuel products creat[ing] greenhouse gas pollution that warms the planet and changes our climate." *Id.* at 247, ¶ 1. And its requested remedy—"an order that provides for abatement of the public nuisance Fossil

Fuel Defendants have created [and] enjoins Fossil Fuel Defendants from creating future common-law nuisances," *id.* at 454, ¶ 263—targets that same conduct Delaware associates with global climate change. So despite its efforts to plead a "disinformation" theory of causation, Delaware is still making the fundamental claim that defendants have caused a public nuisance—global climate change—through unreasonable activity. That is, at bottom, a claim about interstate pollution attributable to fossil fuels, which inherently sounds in federal common law, not state common law.

Moreover, because the State itself claims its injuries have been produced by a long, indeterminate chain of conduct—including conduct of third parties—that occurred all over the globe, the Court's reasons for employing federal common law in *Illinois* apply with even greater force here. Under *Illinois* and *American Electric Power*, if the complex and controversial policy questions underlying claims to abate global climate change are going to be resolved by common-law adjudication at all, those defending against such claims are entitled to have federal courts resolve these claims by applying federal common law.

3.    This case highlights precisely why the Supreme Court has held that in such areas of unique federal interest common-law rules must be articulated by federal courts. State courts have no business deciding how global climate change should be addressed and who—among the countless actors around the world whose conduct contributes to it—bears legal responsibility for creating it.

In addition to the obvious potential for gross unfairness, such state-court-created common-law rules would inevitably intrude upon the federal government's constitutional authority over foreign policy and "present a 'significant conflict' with federal policy" in this area. *Boyle*, 487 U.S. at 512. Among many other problems, state-common-law rules would undermine the regulatory authority States themselves have under carefully calibrated cooperative-federalism programs—programs that are administered by politically accountable officials at the federal, state, and local levels.

Delaware is not alone in seeking judicial answers in state courts to the question of climate change. *See, e.g.*, *City of Hoboken v. Exxon Mobil Corp.*, No. 21-2728 (3d. Cir.); *B.P. P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021); *County of San Mateo v. Chevron Corp.*,

960 F.3d 586 (9th Cir. 2020), *cert. granted, vacated, and remanded*, 141 S. Ct. 2666 (2021). Should the claims in these cases be left to state courts, at least some state courts are likely to be receptive. The inevitable result will be a patchwork of conflicting rules purporting to create liability for the same extraterritorial conduct.

Any worldwide allocation of responsibility for remediation of climate change requires national or international action, not ad hoc intervention by individual state courts acting at the behest of a handful of state and local governments. It is for this exact reason that the Supreme Court long ago held that if plaintiffs are going to ask courts to give common-law answers to questions of interstate pollution, defendants have a right to ensure that any such courts are federal courts applying federal common law. *See Illinois*, 406 U.S. at 103.

## II.   Because the State's Public-Nuisance Claim Is Governed by Federal Common Law, It Necessarily Arises under Federal Law, and Removal Is Therefore Proper

"It is well settled" that the federal-question statute, 28 U.S.C. § 1331, confers jurisdiction over "'claims founded upon federal common law as well as those of a statutory origin.'" *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (quoting *Illinois v. City*

*of Milwaukee*, 406 U.S. 91, 100 (1972)). Accordingly, because Delaware's public-nuisance claim necessarily arises under federal common law, this action "could have been brought originally in federal court" under Section 1331. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019). And this in turn means "the general removal statute[] permits" the defendant energy producers "to remove that action to federal court." *Id.* at 1746.

1.    The federal-question statute gives federal district courts "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And it is by now well-established that a "case 'arising under' federal common law presents a federal question and as such is within the original subject matter jurisdiction of the federal courts." 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4514 (3d ed. 2021); *see also, e.g., Nat'l Farmers Union*, 471 U.S. at 850. The Supreme Court has repeatedly applied this rule, including in *Illinois v. City of Milwaukee*. There it held that common-law claims that, as here, seek abatement of interstate pollution must be governed by federal common law and thus create "actions

arising under the 'laws' of the United States within the meaning of § 1331(a)." 406 U.S. at 99.

2.     Under these principles, the district court had jurisdiction over this case. Delaware's public-nuisance claim—rather than merely being subject to a federal-law defense—*necessarily arises* under federal common law. And Delaware cannot creatively sidestep or indirectly avoid this result—and thereby deprive federal courts of jurisdiction—simply by stamping its public-nuisance claim with a state-law label.

Of course, a plaintiff is generally "the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Yet, "[a]llied as an 'independent corollary' to the well-pleaded complaint rule is the further principle that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)).

That is, a State cannot evade the reach of federal law or federal courts by declaring unilaterally that its claims arise under state law: "If

a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Id.* In other words, "courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum," and "occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.'" *Federated Dep't Stores*, *Inc. v. Moitie*, 452 U.S 394, 397 n.2 (1981) (quoting 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 564–66 (1976)).

This understanding of the well-pleaded complaint rule is the foundation of the Supreme Court's decision in *Avco Corp. v. Aero Lodge No. 735*, which held that an action to enforce a provision of a collective bargaining agreement was "controlled by federal substantive law even though it is brought in a state court"—and was therefore removable to federal court—because the necessarily arose action under federal law. 390 U.S. 557, 560 (1968).

And several circuit courts have since applied this same reasoning to uphold removal of cases raising purportedly state-law claims that in truth arise under federal law. *See, e.g.*, *Caudill v. Blue Cross & Blue*

16

*Shield of N.C.*, 999 F.2d 74, 79 (4th Cir. 1993) (holding that "federal jurisdiction existed over this [purportedly state-common-law breach-of-contract] claim and removal was proper" because the claim was necessarily governed by federal common law under *Boyle*); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926–28 (5th Cir. 1997) (citing *Illinois* and holding that, notwithstanding plaintiff's nominal plea of a state-law claim, federal common law applies to—and confers federal-question jurisdiction over—air-transit lost-cargo claims because Congress preserved a "federal common law cause of action against air carriers for lost shipments"); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (holding that federal, rather than state, common law provides the rule of decision—and a basis for federal question jurisdiction—to a dispute over a federal defense contract).

Indeed, the Second Circuit recently held that New York City could not evade the reach of federal law by declaring that its claim arose under state law. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 91–93 (2d Cir. 2021). Federal common law must govern claims "seeking to recover damages for the harms caused by global greenhouse gas emissions," the Second Circuit explained, regardless of the label used in the complaint:

17

"Artful pleading cannot transform the City's complaint into anything other than a suit over global greenhouse gas emissions." *Id.* at 91. As here, it was "precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that the [plaintiff was] seeking damages." *Id.*

3.    In response to whether federal common law supplies an independent basis for removal in this action, the district court swiftly concluded that "federal common law cannot create federal jurisdiction to support removal here, *irrespective* of whether Plaintiff's claims are 'federal in nature.'" Joint App'x Vol. I, Mem. Op. 34 (emphasis added).

Specifically, the district court conceded that, while Defendants' argument is indeed correct that "Section 1331's grant of jurisdiction will support claims founded upon federal common law and those of a statutory origin," *id.* at 37 n.10 (internal quotations omitted), that conclusion in this case is ultimately "not dispositive, because Plaintiff has not asserted on the face of its complaint any 'claims founded upon federal common law.'" *Id.* (quoting *Nat'l Famers Union*, 471 U.S. at 850). The court reasoned that existing law does not support the conclusion that, "in the context of removal, purportedly controlling federal common law issues—that

are *not* pleaded on the face of the complaint—create the grounds for federal jurisdiction." *Id.* at 36–37. Thus, even if "[f]ederal common law . . . [is] implicated in [Delaware's] state-law claims," the court reasoned, that "does not provide a proper basis for removing this case." *Id.* at 38. And yet where, as here, a claim "arise[s] under federal common law," there "is a permissible basis for jurisdiction based on a federal question." *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 383 (7th Cir. 2007).

When a claim is governed by and arises under federal common law, artful pleading cannot be allowed to avert removal, for barring removal would put *state* courts in the position of creating *federal* common law. Indeed, "a plaintiff cannot frustrate a defendant's right to remove by pleading a case without reference to any federal law when the plaintiff's claim is necessarily federal." 14C Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3722.1 (rev. 4th ed. 2020).

This Court has specifically detailed that, in exercising its independent duty to determine the scope of federal jurisdiction, courts "will look beyond the label and analyze the *substance* of the claim." *Jarbough v. Attorney General*, 483 F.3d 184, 189 (3d Cir. 2007) (emphasis added).

Thus, as a threshold jurisdictional inquiry, federal courts must "determine whether the *real nature* of the claim is federal, regardless of plaintiff's characterization." *Moitie*, 452 U.S. at 397 n.2 (emphasis added) (quoting 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 564–66 (1976)). And this Court has done just that in *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, where this Court held that state-law claims seeking to recover damages for a lost interstate shipment arose under federal common law. 731 F.2d 1113, 1115–16 (3d Cir. 1984).

To hold otherwise would undermine and thwart the purpose of federal common law, which is to ensure that in "a few areas, involving uniquely federal interests," the rules of decision "are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (internal quotation marks and citations omitted). Where, as here, the rules of decision "must be determined according to federal law," "state courts [are] not left free to develop their own doctrines." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426–27 (1964).

In contrast with disputes over the meaning of federal statutory or constitutional provisions, common-law cases require courts to make

difficult judgments about what "seem[s] to [them] sound policy," *Boyle*, 487 U.S. at 513, which is why state-court common-law decisions are usually understood to announce *state* common law. Permitting plaintiffs to compel state-court adjudication of federal-common-law claims would thus put state courts in the position of deciding for themselves *federal* common law—or perhaps instead guessing what policy judgments the Supreme Court would adopt.

The district court missed these foundational points because it fundamentally misunderstood the justification for removal here: Removal is justified because this action "could have been brought originally in federal court," *Home Depot*, 139 S. Ct. at 1748. Crucially, the Supreme Court has repeatedly held that federal courts have jurisdiction over common-law claims that necessarily arise under federal common law. Notably, in *Illinois v. City of Milwaukee*, for example, the key jurisdictional question was whether the defendants could "be sued by Illinois in a federal district court." 406 U.S. at 98. And the Court answered this question in the affirmative, explaining that "federal law govern[ed]" Illinois's common-law nuisance claim, *id.* at 107, which fell within federal-

court jurisdiction because "pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a)," *id.* at 99.

The Court applied this same reasoning in *Oneida Indian Nation of New York State v. Oneida County*, where it held that federal-question jurisdiction encompassed a suit brought by an Indian tribe for "damages representing the fair rental value of the land" to which the tribe claimed a right of possession. 414 U.S. 661, 665 (1974). In doing so, the Court reversed a Second Circuit decision that—much like the district court's decision below—had held "that the jurisdictional claim 'shatters on the rock of the "well-pleaded complaint" rule for determining federal question jurisdiction,'" on the theory that "the federal issue was not one of the necessary elements of the complaint, which was read as essentially seeking relief based on the right to possession of real property." *Id.* (quoting *Oneida Indian Nation of N.Y. State v. Oneida County*, 464 F.2d 916, 918 (2d Cir. 1972)). The Supreme Court explained that because "the governing rule of decision would be fashioned by the federal court in the mode of the common law," the case "arises under the federal law within the

meaning of the jurisdictional statutes and our decided cases," *id.* at 674, 678.

The upshot of these decisions is that in certain areas, such as those involving global-climate change, any common-law claims must be decided under federal common-law rules. And because these claims arise under federal law, defendants have the right to ensure such rules are crafted by *federal* judges—that is, judges appointed by a nationally elected president and confirmed by a senate in which every State is entitled to equal representation. Here, because Delaware's interstate public-nuisance claim *necessarily* arises under federal common law, the district court had jurisdiction to consider the claim, and the defendants were therefore entitled to remove the case to federal court.

## CONCLUSION

This Court should reverse the district court's remand order.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

*s/Thomas M. Fisher*
THOMAS M. FISHER
Solicitor General

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TREG R. TAYLOR
Attorney General
State of Alaska

LESLIE RUTLEDGE
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

DEREK SCHMIDT
Attorney General
State of Kansas

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

LYNN FITCH
Attorney General
State of Mississippi

ERIC SCHMITT
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

DOUGLAS J. PETERSON
Attorney General
State of Nebraska

JOHN M. O'CONNOR
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

KEN PAXTON
Attorney General
State of Texas

SEAN D. REYES
Attorney General
State of Utah

JASON MIYARES
Attorney General
Commonwealth of Virginia

BRIDGET HILL
Attorney General
State of Wyoming

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(1)(7)(B)(i) because it contains 4,474 words, as determined by word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

3.      This brief complies with this Court's Rule 28.3(d) because at least one of the attorneys whose names appear on the brief, including Thomas M. Fisher, is a member of the bar of this Court.

4.      This brief complies with this Court's Rule 31.1(c) because: (1) the text of the electronic brief is identical to the text in the paper document, and (2) the document has been scanned with version 1.361.493.0 of Microsoft Defender Antivirus and is free of viruses.

Dated:  March 22, 2022

By: *s/ Thomas M. Fisher*

Thomas M. Fisher
Solicitor General


Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Thomas M. Fisher*
Thomas M. Fisher
Solicitor General


Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov