No. 22-1096

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

STATE OF DELAWARE,

*Plaintiff-Appellee,*

v.

BP AMERICA INC., BP PLC, CHEVRON CORP., CHEVRON USA INC., CONOCOPHILLIPS, CONOCOPHILLIPS CO., PHILLIPS 66, PHILLIPS 66 CO., EXXON MOBIL CORP., EXXONMOBIL OIL CORP., XTO ENERGY INC., HESS CORP., MARATHON OIL CORP., MARATHON PETROLEUM CORP., MARATHON PETROLEUM CO. LP, SPEEDWAY LLLC, MURPHY OIL CORP., MURPHY USA INC., ROYAL DUTCH SHELL PLC, SHELL OIL COMPANY, CITGO PETROLEUM CORP., TOTAL SA, TOTALENERGIES MARKETING USA INC., OCCIDENTAL PETROLEUM CORP., DEVON ENERGY CORP., APACHE CORP., CNX RESOURCES CORP., CONSOL ENERGY INC., OVINTIV INC., AMERICAN PETROLEUM INSTITUTE

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Delaware, No. 20-cv-1429 (The Honorable Leonard P. Stark)

# BRIEF OF LEGAL SCHOLARS
# AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE

Kenneth T. Kristl (Pa. Bar 207825)
Environmental & Natural Resources
    Law Clinic
Widener University Delaware Law School
4601 Concord Pike
Wilmington, DE 19803
(302) 477-2053
ktkristl@widener.edu

Karen C. Sokol
Loyola University College of Law
7214 St. Charles Avenue, Box 901
New Orleans, LA 70118
(504) 881-4353
kcsokol@lyno.edu

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………….....ii

INTEREST OF *AMICI CURIAE* ...……………………………………………..1

SUMMARY OF ARGUMENT …………………………………………………1

ARGUMENT …………………………………………………………………3

I.   DEFENDANTS' SWEEPING REMOVAL THEORIES ARE BASED ON A SUBSTITUTION OF DELAWARE'S WELL-PLEADED STATE LAW CLAIMS THAT UPSETS THE BALANCE OF FEDERAL AND STATE JUDICIAL POWERS EMBODIED IN FEDERAL REMOVAL DOCTRINE ....3

A. Delaware's Claim Is That Defendants Engaged in Deceptive Acts and Practices in Marketing Fossil Fuels in Violation of Long-Standing State Tort and Statutory Laws ……………………………………………………………………….……3

B. Defendants Cannot Justify Removal Based on a Misrepresentation of Delaware's Claims That Erases the Alleged Violation of Deceptive Marketing…………………………………………………………………9

II.   DEFENDANTS' PRIMARY REMOVAL ARGUMENT IS BASED ON THE FLAWED LOGIC THAT A NON-EXISTENT FEDERAL COMMON LAW CLAIM GOVERNS……………………………………………………16

A. Defendants' "Federal Common Law" Removal Arguments Cannot Be Reconciled with *American Electric Power v. Connecticut*…..………………17

B. Defendants' "Federal Common Law" Removal Arguments Are in Tension with State Courts' Role in the U.S. Federal Constitutional Structure Recognized in the Supreme Court's Caselaw on Federal Common Law……....…………19

CONCLUSION.....………………………………………………………22

APPENDIX A…..………………………………………………………...23

CERTIFICATE OF COMPLIANCE…………………………………………25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) …………………………………13

*Am. Electric Power v. Connecticut*, 564 U.S. 410 (2011)…………….16, 17, 18, 20

*Baltimore v. BP*, No. 19-1644, 2022 WL 1039685 (4th Cir. Apr. 7, 2022) ….13, 17

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431(2005) …………………….…...13

*Beavers-Gabriel v. Medtronic, Inc.*, No. CIV. 13-00686 JMS, 2015 WL 143944 (D. Haw. Jan. 9, 2015)……………………………………………………………13

*BP v. Baltimore*, 141 S. Ct. 1532 (2021)…...………………………………..16

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)…..…………………………..9

*Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821 (Del. 1995)…..……………….14

*El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473 (1999)...…………………….18

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)..…………………………8, 19

*Escola v. Coca-Cola Bottling Co.*, 150 P.2d 436 (1944)..…………………….6

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983)..….....18, 21

*Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993)..………………….6, 7

*Healy v. Ratta*, 292 U.S. 263 (1934)..……………………………………15

*Hillsborough Cty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707 (1985)..………..5

*In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205 (Del. Super. Ct. 1986)...……5

*In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13- MD-2450 KMK, 2015 WL 7018369 (S.D.N.Y. Nov.12, 2015)..……………….……………13

*In re MTBE Prod. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ……………….…...13

*Judge Trucking Co. v. Cooper*, No. 92C-03-041, 1994 WL 164519 (Del. Super. Apr. 14, 1994)…...……………………………………………………… 7

*MacPherson v. Buick Motor Co.*, 217 N.Y. 382 (1916)…...……………….……...12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016) ….20

*Milwaukee v. Illinois*, 451 U.S. 304 (1981)...……………………………………19, 20

Oral Argument, *Baltimore v. BP* (No.19-1644) …………………………………16

*People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51 (2017)..……………14

*San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020).....13

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)..……………………15

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)..……………...8

*Wilhelm v. Globe Solvent Co.*, 373 A.2d 218 (Del. Super. 1977)..……………...6

*Young v. Joyce*, 351 A.2d 857 (Del. 1975) ..……………………………………...12

**Statutes**

28 U.S.C. § 1331…...……………………………………………………...16
28 U.S.C. § 1442(a)(1)..……………………………………………………15
43 U.S.C. § 1349(b)(1) …...………………………………………………15
6 Del. C. § 2512 ..……………………………………………………………….7

**Other Authorities**

Eduardo M. Peñalver, *Acts of God or Toxic Torts—Applying Tort Principles to the Problem of Climate Change*, 38 Nat. Res. J. 563, 572-74 (1998)...………....7

Jeffrey A. Hicke et al., *North America, in Climate Change 2022: Impacts, Adaptation, and Vulnerability* 14-1, 14-3, 14-14 (Hans-O. Pörtner et al. eds., 2022) …………………………………………………………….....10, 11

Karen C. Sokol, *Seeking (Some) Climate Justice in State Tort Law*, 83 Wash. L. Rev. 1383, 1434 (2020)…………………………………………………….5

Navroz K. Dubash & Catherine Mitchell, *National and Sub-national Policies and Institutions, in Climate Change 2022: Mitigation of Climate Change* § 13.4.1 (Jim Skea et al. eds., 2022)…………………………………………………..10

## INTEREST OF *AMICI CURIAE*

*Amici* are professors of tort law, environmental law, consumer protection law, and related areas of law at institutions across the United States. *Amici* have extensive experience studying and teaching the doctrines implicated by this case, and they share interests as scholars and educators in the proper application and development of those doctrines. This brief applies settled doctrine to untangle and resolve the legal questions posed by this appeal.

*Amici* submit this brief solely on their own behalf, not as representatives of their universities. The names of *Amici* are listed in Appendix A, with institutional affiliations provided solely for purposes of identification.

## SUMMARY OF ARGUMENT

On September 10, 2020, the State of Delaware filed its complaint in this case compiling substantial documentation by researchers that Defendants engaged in a systematic, long-standing deceptive marketing campaign designed to hide the catastrophic dangers of their fossil fuel products from consumers—dangers of which Defendants were well aware. *See* Complaint ¶¶ 62-210. Delaware alleges that this conduct violated well-established state tort and statutory laws that state courts regularly apply.

Instead of responding to these claims in state court, Defendants removed this case on the ground that, contrary to Delaware's well-pleaded complaint, the state's claims are not based on deceptive marketing, but rather on "interstate and international emissions." Appellants' Opening Brief ("OB") 2. Whether such claims would justify removal is highly questionable in any case, but it is irrelevant in this one because that is not the cause of action that Delaware pleaded. Because there is no basis for removing Delaware's state deceptive marketing claims, this Court should uphold the district court's order remanding Delaware's case to state court.

Comity requires federal courts to remand improperly removed cases. This is especially important here, where the plaintiff is a sovereign state alleging state law claims. Indeed, Defendants' improper removal has interfered with the Delaware Attorney General's efforts to exercise her duty to enforce the protections provided by long-standing state laws on behalf of Delaware residents.

Failing to remand in this case would upend the civil justice system by allowing Defendants to be the masters of Delaware's complaint and compromise the constitutional balance between state and federal judicial authority that the laws governing federal removal are designed to maintain. Further, a failure to remand would deprive state courts of their authority to apply well-established state tort and statutory laws that provide state residents with a distinctive combination of vital,

long-standing public health and safety protections in the form of compensation, deterrence, and public accountability. The existence of such state laws—and *a fortiori* state judicial authority to apply them—are an important example of our federal system of democratic governance at work.

## ARGUMENT

**I. DEFENDANTS' SWEEPING REMOVAL THEORIES ARE BASED ON A SUBSTITUTION OF DELAWARE'S WELL-PLEADED STATE LAW CLAIMS THAT UPSETS THE BALANCE OF FEDERAL AND STATE JUDICIAL POWERS EMBODIED IN FEDERAL REMOVAL DOCTRINE.**

### A. Delaware's Claim Is That Defendants Engaged in Deceptive Acts and Practices in Marketing Fossil Fuels in Violation of Long-Standing State Tort and Statutory Laws.

In its complaint, Delaware claims that Defendants violated long-standing Delaware tort law and the Delaware Consumer Fraud Act. Delaware's factual basis for these claims is extensive evidence uncovered in recent years that Defendants engaged in a decades-long, coordinated disinformation campaign designed not just to maintain, but to increase, demand for their products by sowing doubt about the science establishing their catastrophic dangers. More specifically, Delaware presents two timelines alongside each other to striking effect.

First, the Complaint sets forth extensive documentary evidence that Defendants became increasingly aware that their products were contributing to the dangerous breakdown of the planet's climate system—and increasingly eager to

3

deceive consumers about this fact. In the 1950s, the companies began putting significant funding into research on the changes in the climate system that would be caused by continued fossil fuel combustion and on the consequences for people and the planet. Complaint ¶ 62. The industry's research continued, and, by the mid- to late 1970s, researchers were informing the industry that it was necessary to immediately begin transitioning from fossil fuels to carbon-free energy sources in order to avert planetary catastrophe. As one of Exxon's scientists put it in a 1981 internal memorandum to company executives: "[I]t is distinctly possible that [continued $CO_2$ emissions from fossil fuel products] will produce effects which will indeed be catastrophic (at least for a substantial fraction of the world's population)." *Id.* ¶ 85. In response, instead of taking measures to change their business activities to mitigate their consequences, Defendants accelerated those activities, protected their infrastructure from the climate impacts that they knew were coming, and mounted a concerted disinformation campaign designed to obscure the grave threat presented by the use of fossil fuel products to human health and safety and to maintain and grow their command of the market.

Second, another "acceleration" took place alongside the increase in Defendants' awareness of the dangers of their products and their deceptive marketing in response: namely, "[t]he substantial majority of all anthropogenic greenhouse gas emissions in history has occurred since the 1950s," the vast majority

4

of which are from fossil fuel combustion. *Id.* ¶ 6.  Further, over this period, the rate of fossil fuel greenhouse gas emissions has increased. *Id.*

In this case, Delaware chose to exercise its right both to invoke its own long-standing state tort and statutory laws, which are well-suited to the alleged wrongful conduct of deceptive marketing, and to file its claims in its state court, which has experience regularly applying those laws.  For decades, Delaware and other state courts have applied their state laws to provide remedies for harms to health and safety caused by profit-driven deception in marketing. *See* Karen C. Sokol, *Seeking (Some) Climate Justice in State Tort Law*, 83 Wash. L. Rev. 1383, 1434 (2020); *cf. Hillsborough Cty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 719 (1985) ("[A]s we have stated, the regulation of health and safety matters is primarily, and historically, a matter of local concern.").

State tort law has long been an important mechanism in this country for holding private actors legally and financially responsible for misconduct.  It has become particularly important since the mid-20th century, as corporations amassed both economic and political power and significant control over information thanks to sophisticated and often deceptive marketing campaigns. *See*, *e.g.*, *In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205, 1208 (Del. Super. 1986) ("The law is clear that a product, even though 'virtually faultless in design, material, and workmanship, may nevertheless be deemed defective where the manufacturer . . . fails to discharge

a duty to warn'.") (quoting *Wilhelm v. Globe Solvent Co.*, 373 A.2d 218, 223 (Del. Super. 1977)); *Escola v. Coca-Cola Bottling Co.*, 150 P.2d 436, 443 (1944) ("The consumer no longer has means or skill enough to investigate for himself the soundness of a product, even when it is not contained in a sealed package, and his erstwhile vigilance has been lulled by the steady efforts of manufacturers to build up confidence by advertising and marketing devices . . . .") (Traynor J., concurring). Around the same time that state courts began drawing on existing state tort law principles to provide relief to those injured by deceptive marketing, state legislatures, including that of Delaware, enacted consumer protection statutes imposing civil penalties for deceptive marketing. *See Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993) ("In 1965, the Delaware General Assembly . . . desiring to protect the interests of consumers and businesses, passed . . . the Consumer Fraud Act . . . "). Underlying both types of law is Delaware's and other states' recognition that deceptive marketing presents significant health and safety threats, and thus that it is imperative that they provide their residents with protections.

The state tort and statutory laws invoked by Delaware in this case provide the Attorney General with a distinctive combination of protections that are particularly well-suited to holding businesses that engage in deceptive marketing accountable to those whom they have thereby harmed. "The basic policies underlying the field

of torts is deterrence of tortious conduct and compensation of a victim." *Judge Trucking Co. v. Cooper*, No. 92C-03-041, 1994 WL 164519, at \*5 (Del. Super. Apr. 14, 1994). Similarly, the Delaware Consumer Fraud Act is "intended to redress wrongs between a business and its customers." *Grand Ventures*, 632 A.2d at 65; *see also id.* at 70 ("[T]he Consumer Fraud Act provides remedies for violations of the 'vertical' relationship between a buyer (the consumer) and a producer or seller. Damages are the traditional remedy."). By requiring profit-driven actors to pay damages and civil penalties, state tort and consumer statutory laws not only provide some relief to the injured in the form of compensation, but also force defendants to internalize some of the costs of their wrongful business practices and to thereby deter the harmful behavior. *See* Eduardo M. Peñalver, *Acts of God or Toxic Torts— Applying Tort Principles to the Problem of Climate Change*, 38 Nat. Res. J. 563, 572-74 (1998); *see also* 6 Del. C. § 2512 ("It is the intent of the General Assembly that [unfair or deceptive merchandising] practices be swiftly stopped . . .").

This synergistic dual function of tort law and consumer protection statutes is particularly valuable in cases, such as this one, where manufacturers have used deception to increase sales of products that expose individuals, communities, and their environment to catastrophic risks. As Delaware alleges: "Defendants' efforts between 1965 and the present to deceive about the consequences of the normal use

of their fossil fuel products . . . unduly inflated the market for fossil fuel products." Complaint ¶ 58.

In contrast to state courts, federal courts have never recognized a common law claim based on deceptive marketing. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state . . . . And no clause in the Constitution purports to confer such a power upon the federal courts."). This is because there is no need for a federal rule of decision on deceptive marketing to "protect uniquely federal interests." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641 (1981) ("[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases."). The federal government has never directed Defendants to deceive consumers or granted them leases for that purpose. Department of Energy Secretary Jennifer Granholm did not call on fossil fuel companies to engage in a disinformation campaign in response to the Ukraine crisis. *See* OB at n. 9 and accompanying text. Thus, Defendants would be hard-pressed to argue that Delaware's deceptive marketing claims should be heard in federal court.

And Defendants do not attempt to do so. Instead, they maintain that, notwithstanding that well over half of Delaware's complaint is devoted to detailing allegations of deceptive marketing, Delaware's state tort and statutory claims based on those allegations are not in fact what they are on the face of its complaint. Rather, Defendants maintain that all of Delaware's claims must be understood as based on greenhouse gas emissions. OB at 13-14. Although such a reverse engineering of Delaware's claims may be convenient for Defendants, that is not how federal removal, which is designed to preserve the balance of federal and state judicial authority in our federal system of governance, works. That is the point of the well-pleaded complaint rule: "[T]he plaintiff is the master of the claim; [they] may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

**B.** **Defendants Cannot Justify Removal Based on a Misrepresentation of Delaware's Claims That Erases the Alleged Violation of Deceptive Marketing.**

The premise underlying each of Defendants' removal arguments is that Delaware's claims are not actually based on the alleged unlawful conduct of deception, but rather are "based on interstate and international sources of pollution." OB at 2. Defendants maintain that they are entitled to erase Delaware's clearly stated basis of its claims because Delaware "seek[s] redress for harms allegedly caused by transboundary emissions." OB at 12-14. However, Delaware clearly alleges in its

complaint that it seeks redress for harms caused by Defendants' deceptive marketing:

> [Defendants'] failures to warn of the threats their fossil fuel products posed to the world's climate; their wrongful promotion of their fossil fuel products and concealment of known hazards associated with use of those products; their public deception campaigns designed to obscure the connection between their products and global warming and its environmental, physical, social, and economic consequences; is a direct and proximate cause that brought about or helped bring about [Delaware's climate-crisis related injuries].

Complaint ¶ 226.

Using a deceptive marketing campaign to profit by flooding the market with highly dangerous products is a grave public health and safety threat. For the first time, the Intergovernmental Panel on Climate Change (IPCC) highlighted this fact in the context of climate deception in a chapter on the impacts of the climate crisis in North America in its most recent assessment report: "Vested economic and political interests have organized and financed misinformation and 'contrarian' climate change communication" that "undermines climate science and disregards risk and urgency." Jeffrey A. Hicke et al., *North America*, *in Climate Change 2022: Impacts, Adaptation, and Vulnerability* 14-1, 14-3, 14-14 (Hans-O. Pörtner et al. eds., 2022).[1] Noting that such propagation of misinformation is particularly

---

[1] The IPPC's report is available at https://www.ipcc.ch/assessment-report/ar6/. The IPCC further noted: "In the US, the oil industry has underpinned emergence of climate scepticism and its spread abroad." Navroz K. Dubash &

prevalent in the United States, the IPCC cites multiple social science studies finding that this misinformation has resulted in "public misperception of climate risks." *Id.* at 14-3.

Defendants nevertheless insist that even if Delaware's "claims are characterized as focusing on . . . deceptive marketing," that "is irrelevant because Plaintiff's alleged injuries all stem from interstate and international emissions, and thus must be governed by federal law." OB at 20. Use of fossil fuel products certainly results in greenhouse emissions that have caused myriad harms, including those for which Delaware seeks redress in this case. *See* Complaint ¶¶ 226-231. Indeed, in the same IPCC chapter discussed above, the authors detail myriad climate "loss and damages" such as those for which Delaware seeks recovery. *See* Hicke et al., *supra*, 14-1–14-94. But that does not justify Defendants' deeming the allegations of deceptive marketing that are the clearly stated basis of all Delaware's claims "irrelevant." To the contrary, deceptive marketing is central to all Delaware's claims because the danger of deceptive marketing is that consumers will use dangerous products because they misperceive the risks those products present. As Delaware states in its Complaint:

> As in the case of cigarettes, history demonstrates that when consumers are made aware of the harmful effects or qualities of the products they purchase, they often choose not to

Catherine Mitchell, *National and Sub-national Policies and Institutions*, *in Climate Change 2022: Mitigation of Climate Change* § 13.4.1 (Jim Skea et al. eds., 2022).

11

purchase them, to reduce their purchases, or to make different purchasing decisions. This phenomenon holds especially true when products have been shown to harm public health or the environment. For example, increased consumer awareness of the role of pesticides in harming human health, worker health, and the environment has spurred a growing market for food grown organically and without the use of pesticides. With access to information about how their food is grown, consumers have demanded healthier choices, and the market has responded.

Complaint ¶ 264.

In other words, deceptive marketing can present a public health and safety threat because it is often deployed in order to sell products presenting risks that, if known, would likely lead consumers to demand safer alternatives. Indeed, deception in marketing is key to continuing to profit from the purchase and use of products, such as fossil fuel products, that present catastrophic risks to human life and well-being. And protecting public health and safety is one of the main purposes of the sort of state tort and statutory laws that Delaware invokes in this case. *See MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 390 (1916) ("We have put aside the notion that the duty to safeguard life and limb . . . grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in [tort] law."); *cf. Young v. Joyce,* 351 A.2d 857, 859 (Del. 1975) (noting that the Delaware Consumer Fraud Act's "primary purpose is to protect the consumer and accordingly is to be liberally construed"). Plaintiffs have regularly invoked state tort laws and consumer protections statutes to address deceptive

marketing of consumer products. *See e.g.*, *Altria Grp., Inc. v. Good*, 555 U.S. 70, 84 (2008) (cigarettes); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 435, 444 (2005) (pesticides); *In re MTBE Prod. Liab. Litig.*, 725 F.3d 65, 104 (2d Cir. 2013) (MTBE); *San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 665-66 (N.D. Cal. 2020) (opioids); *In re Ford Fusion & C-Max Fuel Econ. Litig.,* No. 13- MD-2450 KMK, 2015 WL 7018369, at *28 (S.D.N.Y. Nov. 12, 2015) (vehicles); *Beavers-Gabriel v. Medtronic, Inc.*, No. CIV. 13-00686 JMS, 2015 WL 143944, at *4-6 (D. Haw. Jan. 9, 2015) (medical device).

Like cancer and other debilitating diseases are caused by the use of tobacco products, climate-crisis related injuries—such as sea level rise, deadly heat waves and storms, and water and food insecurity—are caused by the use of fossil fuel products. That is why these products are dangerous, and thus the provision of truthful information of their risks by manufacturers so vital. It would be impossible for Delaware to explain the deceptive nature of Defendants' marketing campaign and its connection to the injuries that Delaware alleges that it has suffered without discussing the dangerous climate-disrupting emissions that result from the use of fossil fuel products. But that does not somehow transform Delaware's deceptive marketing claims into ones based on tortious emissions. As the Fourth Circuit stated in *Baltimore v. BP*: "Although th[e] story [of fossil fuel emissions and production] is necessary to establish the avenue of Baltimore's climate-change-related injuries,

13

it is not the source of tort liability." No. 19-1644, 2022 WL 1039685, at \*32 (4th Cir. Apr. 7, 2022).

Defendants' argument can thus only be made sense of if it is understood as relying on the unstated assumption that Delaware cannot prove that Defendants' deceptive marketing caused its injuries. However, whether Delaware can establish that requisite causal connection is irrelevant for purposes of federal removal. A removal petition is neither a motion to dismiss nor a motion for summary judgment; it can address only jurisdictional issues. Delaware and other state courts are the ones with the authority to address the element of causation and other such questions of state law. *See, e.g.*, *Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821, 828 (Del. 1995) (emphasizing that "[a] finding of negligence by the defendant, standing alone, will not sustain an action for damages unless it is also shown to be a proximate cause of plaintiff's injury" and explicating "Delaware courts' time-honored definition of proximate cause"); *see also People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51, 101-108 (2017) (undertaking careful analysis of defendants' multiple challenges to the trial court's finding that the plaintiffs had established the causation element of their public nuisance claim based on defendants' deceptive marketing of lead paint).

In short, Defendants cannot contest causality in federal court. As the Supreme Court has emphasized: "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously

confine their own jurisdiction to the precise limits which the statute has defined."

*Healy v. Ratta*, 292 U.S. 263, 270 (1934); *see also, e.g.*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) ("[T]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.").

Perhaps the most glaring problem with Defendants' logic in support of removal is their attempt to erase the "deceptive marketing" heart of Delaware's claims using thinly veiled causation arguments that can be resolved only under state laws. It is not, however, the only glaring logical flaw. The other, related problem is that Defendants' primary removal arguments are based on the premise that the governing law is a federal common law claim that no longer exists.

## II. DEFENDANTS' PRIMARY REMOVAL ARGUMENT IS BASED ON THE FLAWED LOGIC THAT A NON-EXISTENT FEDERAL COMMON LAW CLAIM GOVERNS.[2]

Defendants' primary removal argument[3] is that there is federal-question jurisdiction under 28 U.S.C. § 1331 because federal common law "necessarily and exclusively governs." OB at 13. However, Defendants do not cite one federal common law case involving deceptive marketing in support of this sweeping claim. Nor could they, as the Supreme Court has never recognized such a claim. Rather, Defendants rely on their reframing of Delaware's claims as based on "transboundary emissions" to maintain that federal common law of nuisance governs. In addition to the fact that Defendants impermissibly seek removal based on a misrepresentation of Delaware's claims as discussed above in Part I, Defendants' argument is inconsistent with Supreme Court caselaw addressing federal common law and its role in the U.S. constitutional system.

---

[2] Defendants' arguments for federal jurisdiction under 28 U.S.C. § 1442(a)(1) (federal officer) and 43 U.S.C. § 1349(b)(1) (Outer Continental Shelf Lands Act) are not directly addressed in this brief because they are fully addressed by the parties. However, the concerns expressed herein about Defendants' expansive theories of removal are equally applicable to these two theories of removal.

[3] In oral arguments before a panel of the U.S. Court of Appeals for the Fourth Circuit on remand from the Supreme Court in *BP v. Baltimore*, 141 S. Ct. 1532 (2021), attorney for Defendants Kannon Shanmugam told the panel that they were "relying primarily on federal common law" in support of removal. Oral Argument at 9:57, *Baltimore v. BP* (No.19-1644), https://www.ca4.uscourts.gov/OAarchive/mp3/19-1644-20220125.mp3. This priority is also reflected in the structure and content of the Defendants' Opening Brief in this case.

**A.** **Defendants' "Federal Common Law" Removal Arguments Cannot Be Reconciled with *American Electric Power v. Connecticut*.**

For two related reasons, Defendants' federal-common-law argument conflicts with the Supreme Court opinion that Defendants rely most heavily on: *American Electric Power v. Connecticut*, 564 U.S. 410 (2011).

First, in *American Electric Power*, the Supreme Court held that federal common law claims based on greenhouse gas pollution are no longer available because they were displaced by the Clean Air Act. 564 U.S. at 424. Defendants are thus making the nonsensical argument that a non-existent federal common law claim "necessarily and exclusively governs" this case. *See Baltimore*, 2022 WL 1039685, at \*10 ("Essentially, Defendants believe that removal is proper based on federal common law even when the federal common law claim has been deemed displaced, extinguished, and rendered null by the Supreme Court. We believe that position defies logic.")

Second, the Supreme Court's reasoning in *American Electric Power* makes clear that Defendants' argument is not viable given the Court's holding that federal common law based on greenhouse gas emissions was displaced. In contrast to Delaware, the plaintiffs in *American Electric Power* had brought both federal common law and state common law claims, and they filed them in federal court. Importantly, after stating its holding that the federal common law claim was

17

displaced by the Clean Air Act, the Court made clear that the plaintiffs' *state* common law claims could proceed. *See* 564 U.S. at 429. "[L]eav[ing] the matter open for consideration on remand," the Court stated that the appropriate question regarding any impact of federal law on the state common law claims was one of preemption by federal statute: "In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia,* on the preemptive effect of the federal Act." *Id.*

Thus, even assuming *arguendo* that Defendants' substitution of Delaware's deceptive marketing claims with one based on tortious emissions were acceptable, the *American Electric Power* Court's conclusion makes clear that remand would still be proper in this case. Delaware and other state courts are perfectly capable of addressing the affirmative defense of federal preemption. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 487 n. 7 (1999) (noting that state courts "can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different"). Further, state courts are not merely capable of addressing questions of federal preemption, they are *entitled* to do so when plaintiffs bring exclusively state law claims in state court. As the Supreme Court has emphasized: "[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of

preemption." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983).

Remand is *a fortiori* proper for the claims based on deceptive marketing that Delaware in fact asserts and for which a federal common law claim has never been recognized. Unlike Defendants' reasoning, the *American Electric Power* Court's reasoning is not only sound; it is also based on precedent recognizing the highly limited nature of federal common law and, relatedly, the much greater significance of state common law in our federal system of governance.

**B.      Defendants' "Federal Common Law" Removal Arguments Are in Tension with State Courts' Role in the U.S. Federal Constitutional Structure Recognized in the Supreme Court's Caselaw on Federal Common Law.**

It is not surprising that the Supreme Court has never recognized a federal common law claim based on deceptive marketing. After all, unlike the courts of Delaware as well as those of every other state, federal courts have largely been out the business of common lawmaking since *Erie v. Tompkins*, 304 U.S. 64 (1938). In its cases addressing federal common law since *Erie*, the Supreme Court has emphasized the limited nature of federal common law in light of the powers of the federal judiciary relative to those of the states and of Congress. In *Milwaukee v. Illinois*, 451 U.S. 304 (1981), the Court stated: "The enactment of a federal rule in an area of national concern, *and the decision whether to displace state law in doing so*, is generally made not by the federal judiciary, purposefully insulated from

democratic pressures, but by the people through their elected representatives in Congress." *Id.* at 312-13 (emphasis added). As a result, while state common law is "routine," *id.* at 229, federal common law is "a necessary expedient" and "an unusual exercise of lawmaking by federal courts," *id.* at 314 (internal quotations omitted). The *American Electric Power* Court reaffirmed this constitutional dynamic of state and federal authority in explaining the difference between displacement of federal common law by a federal statute, on the one hand, and preemption of state law by a federal statute, on the other: "Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest [congressional] purpose demanded for preemption of state law." 564 U.S. at 423 (alteration in original) (quoting *Milwaukee*, 451 U.S. at 317).

Importantly, in both *Milwaukee* and *American Electric Power*, the Supreme Court emphasized the necessity of limiting the application of federal common law in cases filed in federal court. The Court's concerns with protecting the integrity of democratic governance in a federal system are heightened in cases, such as this one, where defendants seek to *remove* cases from state courts on the ground that the plaintiffs' claims are "necessarily govern[ed]" by a federal common claim that no longer exists and, even when it did pre-*American Electric Power*, it still represented "an unusual exercise of lawmaking by federal courts." *Milwaukee v. Illinois*, 451 U.S. at 314. In its cases addressing removal issues, the Court has repeatedly

emphasized that the U.S. federal system empowers state courts to address important federal issues, including federal defenses. For example, in concluding that state courts could address issues relating to the Securities and Exchange Act that arose as defenses in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, the Court stated:

> Our decisions . . . reflect a "deeply felt and traditional reluctance . . . to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes." That interpretive stance serves, among other things, to keep state-law actions . . . in state court, and thus to help maintain the constitutional balance.

578 U.S. 374, 389-90 (2016) (internal citation omitted); *see also, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 14 (recognizing the well-established rule that federal preemption is not a basis for removal).

Thus, the Supreme Court has repeatedly emphasized the great import of state courts' role in applying their state laws within our federal system of governance in both its removal cases and in its quite limited post-*Erie* body of federal common law cases. This case illustrates the wisdom of the Supreme Court's recognition of the significance of state laws and state courts in the U.S. federal constitutional structure, and the consequent need to strictly adhere to the limits of federal judicial authority.

## CONCLUSION

In the U.S. constitutional structure, states have always played an essential role in providing their residents with public health and safety protections such as those provided by the tort and statutory laws that Delaware invokes in this case. Delaware's state courts should be permitted to exercise their constitutionally-protected powers by hearing the Attorney General's claims that Defendants' long-standing deceptive marketing campaign violated state tort and statutory laws that Delaware courts regularly apply and develop.

For the foregoing reasons, this Court should affirm the District Court's remand order.

> \_\_\_\_/s/ Kenneth T. Kristl_____
> Kenneth T. Kristl, Esq. (Pa. Bar 207825)
> Environmental & Natural Resources Law Clinic
> Widener University Delaware Law School
> 4601 Concord Pike
> Wilmington, DE 19803
> (302) 477-2053
> ktkristl@widener.edu
>
> *Counsel for Amici Legal Scholars*

# <u>APPENDIX A</u>

The following *Amici* submit this brief solely on their own behalf, not as representatives of any law school, university, or any other entity. Institutional affiliations are provided solely for purposes of identification.

Karen C. Sokol, William L. Crowe Sr. Distinguished Professor of Law, Loyola University New Orleans College of Law (lead author)

Lisa Benjamin, Assistant Professor, Lewis & Clark Law School

Rebecca Bratspies, Professor of Law and Director of the Center for Urban Environmental Reform, CUNY School of Law

Alejandro E. Camacho, Chancellor's Professor of Law and Faculty Director, Center for Land, Environment, and Natural Resources, University of California, Irvine

Michael C. Duff, Winston S. Howard Distinguished Professor of Law, University of Wyoming College of Law

Daniel Farber, Sho Sato Professor of Law and Faculty Director, Center for Law, Energy, and the Environment, University of California, Berkeley

Robert L. Glicksman, J.B & Maurice C. Shapiro Professor of Environmental Law, The George Washington University Law School

Katrina Fischer Kuh, Haub Distinguished Professor of Environmental Law Elisabeth Haub School of Law at Pace University

Douglas A. Kysar, Joseph M. Field '55 Professor of Law, Yale University

Albert Lin, Martin Luther King Jr. Professor of Law, University of California Davis School of Law

James R. May, Esq., Distinguished Professor of Law and Founder of the Global Environmental Rights Institute, Widener University Delaware Law School

Martha T. McCluskey, Professor Emerita and Senior Research Scholar, State University of New York, University at Buffalo Law School

Thomas O. McGarity, William Powers, Jr. and Kim Heilbrun Chair in Tort Law, University of Texas School of Law

Patrick Parenteau, Professor of Law and Senior Counsel Environmental Advocacy Clinic, Vermont Law School

Sidney A. Shapiro, Frank U. Fletcher Chair in Law, Wake Forest University

Robert R.M. Verchick, Gauthier-St. Martin Chair in Environmental Law, Loyola University New Orleans

David C. Vladeck, A.B. Chettle, Jr., Professor of Law, Georgetown University Law Center

# CERTIFICATE OF COMPLIANCE

Counsel for *Amici* Legal Scholars hereby certifies:

1.     This brief is submitted in accord with Fed. R. App. P. 29(a) and corresponding Third Circuit Rules. All parties have consented to the submission of amicus curiae briefs in this case. No counsel for a party authored this brief in whole or in part, and no person other than *Amici* or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

2.     This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B). This brief contains 5,095 words, as counted by counsel's word processing system and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

4.      The copies being mailed to the court are identical to the electronic copy filed via the Court's electronic filing system.  Counsel ran a scan of the .pdf file using MacAfee Total Protection Version 16.0 and detected no viruses.

_____/s/ Kenneth T. Kristl_____
Kenneth T. Kristl, Esq. (Pa. Bar 207825)
Environmental & Natural Resources Law Clinic
Widener University Delaware Law School
4601 Concord Pike
Wilmington, DE 19803
(302) 477-2053
ktkristl@widener.edu

*Counsel for Amici Legal Scholars*

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on April 21, 2022 he caused an electronic copy of the foregoing **BRIEF OF LEGAL SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE** to be filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, and that service on the counsel listed on the attachment to this Certificate took place through the appellate CM/ECF system and mailing of a paper copy.

_____/s/ Kenneth T. Kristl_____
Kenneth T. Kristl, Esq. (Pa. Bar 207825)
Environmental & Natural Resources Law Clinic
Widener University Delaware Law School
4601 Concord Pike
Wilmington, DE 19803
(302) 477-2053
ktkristl@widener.edu

Christian Douglas Wright, Esq.
Jameson A.L. Tweedie, Esq.
Ralph K. Durstein III, Esq.
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

Victor M. Sher, Esq.
Matthew K. Edling, Esq.
Stephanie D. Biehl, Esq.
Martin D. Quinones, Esq.
Sher Edling LLP
100 Montgomery Street, Suite 1410
San Francisco, CA 94014

*Counsel for State of Delaware*

Steven L. Caponi, Esq.
K&L Gates LLP
600 N. King Street, Suite 901
Wilmington, DE 19801

David C. Frederick, Esq.
Grace Knofczynski, Esq.
Daniel S. Severson, Esq.
Kellogg, Hansen, Figel & Frederick, PLLC
1615 M Street N.W., Suite 400
Washington, DC 20036

*Counsel for Shell plc (f/k/a Royal Dutch Shell plc) and Shell USA, Inc. (f/k/a Shell Oil Company*

Theodore J. Boutrous, Jr., Esq.
William E. Thomson, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

Andrea E. Neuman, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

Thomas G. Hungar, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Counsel for Chevron Corp. and Chevron U.S.A., Inc.*

Nancy G. Milburn, Esq.
Diana Rieter, Esq.
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710

Jonathan W. Hughes, Esq.
Arnold & Porter Kaye Scholer LLP 3
Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024

Matthew T. Heartney, Esq.
John Lombardo, Esq.
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844

Paul J. Fishman, Esq.
Arnold & Porter Kaye Scholer LLP
One Gateway Center, Suite 1025
Newark, NJ 07102

*Counsel for BP America Inc. and BP p.l.c.*

Nathan P. Eimer, Esq.
Pamela R. Hanebutt, Esq.
Lisa Meyer, Esq.
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604

Robert E. Dunn, Esq.
Eimer Stahl LLP
99 S. Almaden Blvd. Suite 662
San Jose, CA 95113

*Counsel for CITGO Petroleum Corp.*

Tristan L. Duncan, Esq.
Daniel B. Rogers, Esq.
Shook, Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108

*Counsel for Murphy USA Inc.*

Jeffrey L. Moyer, Esq.
Richard, Layton & Finger P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Kevin Orsini, Esq.
Vanessa A. Lavely, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

*Counsel for Occidental Petroleum Corp.*

Kevin J. Mangan, Esq.
Womble Bond Dickinson (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801

Andrew G. McBride, Esq.
McGuireWoods LLP
2001 K Street N.W.
Washington, DC 20006

Kathryn M. Barber, Esq.
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219

*Counsel for American Petroleum Institute*

Antoinette D. Hubbard, Esq.
Maron Marvel Bradley Anderson & Tardy LLC
1201 N. Market Street, Suite 900
Wilmington, DE 19801

Shannon S. Broome, Esq.
Hunton Andrews Kurth LLP
50 California Street
San Francisco, CA 94111

Shawn Patrick Regan, Esq.
Hunton Andrews Kurth LLP
200 Park Avenue
New York, NY 10166

*Counsel for Marathon Petroleum Corp, Marathon Petroleum Company LP, and Speedway LLC*

Mackenzie M. Wrobel, Esq.
Duane Morris LLP
1201 N. Market Street, Suite 501
Wilmington, DE 19801

Michael L. Fox, Esq.
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94104-1127

Michael F. Healy, Esq.
Shook Hardy & Bacon LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105

*Counsel for Ovintiv Inc.*

Christian J. Singewald, Esq.
White and Williams LLP
600 N. King Street
Wilmington, DE 19801

Joy C. Fuhr, Esq.
Brian Schmalzbach, Esq.
800 East Canal Street
Richmond, VA 23219

*Counsel for Devon Energy Corp.*

Kathleen Taylor Sooy, Esq.
Tracy A. Roman, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

Honor R. Costello, Esq.
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

*Counsel for CONSOL Energy Inc.*

Steven M. Bauer, Esq.
Margaret A. Tough, Esq.
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

Jameson R. Jones, Esq.
Daniel R. Brody, Esq.
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202

Daniel J. Brown, Esq.
Alexandra M. Joyce, Esq.
McCarter & English LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801

*Counsel for ConocoPhillips and ConocoPhillips Company*

Noel J. Francisco, Esq.
David M. Morrell, Esq.
Jones Day
J. Benjamin Aguinaga, Esq.
51 Louisiana Avenue, N.W.
Washington, DC 20001

David C. Kiernan, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

*Counsel for CNX Resources Corp.*

Steven M. Bauer, Esq.
Margaret A. Tough, Esq.
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

Daniel J. Brown, Esq.
Alexandra M. Joyce, Esq.
McCarter & English LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801

*Counsel for Phillips 66 and Phillips 66 Company*

Michael A. Barlow, Esq.
Abrams & Bayliss LLP
20 Montchannin Road, Suite 200
Wilmington, DE 19807

Robert P. Reznick, Esq.
Orrick Herrington & Sutcliffe LLP
1152 15th Street NW
Washington, DC 20005

*Counsel for Marathon Oil Corp.*

Kannon K. Shanmugam, Esq.
William T. Marks, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
2001 K Street, N.W.
Washington, DC 20006

Theodore V. Wells, Jr., Esq.
Daniel J. Toal, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Exxon Mobil Corp., ExxonMobil Oil Corpor, and XTO Energy, Inc.*

Robert W. Whetzel, Esq.
Alexandra M. Ewing, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
902 North King Street
Wilmington, DE 19801

*Counsel for Apache Corp.*

Robert W. Whetzel, Esq.
Blake Rohrbacher, Esq.
Alexandra M. Ewing, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
902 North King Street
Wilmington, DE 19801

*Counsel for Total S.A. adnd TotalEnergies Marketing USA, Inc.*

Joseph J. Bellew, Esq.
White and Williams LLP
600 North King Street, Suite 800
Wilmington, DE 19801-3722

J. Scott Janoe, Esq.
Baker Botts LLP
910 Louisiana Street, Suite 3200
Houston, TX 77002-4995

Megan Berge, Esq.
Baker Botts LLP
700 K Street N.W.
Washington, DC 20001-5692

*Counsel for Murphy Oil Corp. and Hess Corp.*