# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 22-1096

STATE OF DELAWARE,
*Plaintiff-Appellee,*

v.

BP AMERICA, INC., *et al.,*
*Defendants-Appellants,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
CIVIL ACTION NO. 20-cv-1429-LPS

**Brief of New Jersey, Connecticut, Hawai'i, Maine, Maryland, Massachusetts, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Washington, and the District of Columbia As *Amici Curiae***

MATTHEW J. PLATKIN
*Acting Attorney General*
*of New Jersey*

JEREMY M. FEIGENBAUM
*State Solicitor*

ALEC SCHIERENBECK
*Deputy State Solicitor*

AARON KLEINBAUM
*Assistant Attorney General*

DANIEL RESLER
J. MATTHEW NOVAK
*Deputy Attorneys General*

R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, NJ 08625-0106
(609) 376-2740
Aaron.Kleinbaum@law.njoag.gov
*Counsel for* Amicus Curiae
*the State of New Jersey*

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

**Page**

INTERESTS OF *AMICI CURIAE* ........................................................- 1 -

ARGUMENT .......................................................................- 3 -

I.   DELAWARE'S CLAIMS ARISE UNDER STATE LAW, NOT UNDER
FEDERAL COMMON LAW. ..................................................- 4 -

  A. Removal Cannot Rest On Federal Common Law Preemption Defenses..- 5 -

  B. Federal Common Law Does Not Apply. ...................................- 10 -

  C.  State Courts Are Well Suited To Address These Defenses ...................- 13 -

II.  THERE IS NO JURISDICTION UNDER *GRABLE*. ..............................- 16 -

III.  APPELLANTS' ALLEGED TIES TO FEDERAL OFFICERS OR THE
OUTER CONTINENTAL SHELF DO NOT WARRANT REMOVAL - 19 -

CONCLUSION ....................................................................- 26 -

CERTIFICATION OF BAR MEMBERSHIP...................................- 28 -

CERTIFICATION OF COMPLIANCE ...........................................- 29 -

CERTIFICATION OF SERVICE..........................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Elec. Power Co. v. Connecticut*,
 564 U.S. 410 (2011).....................................................................................11, 12

*Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*,
 903 F.3d 903 (9th Cir. 2018) ..........................................................................1, 7

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
 25 F.4th 1238 (10th Cir. 2022) ....................................................................*passim*

*BP P.L.C. v. Mayor & City Council of Baltimore*,
 141 S. Ct. 1532 (2021)......................................................................................14

*Boyle v. United Technologies Corp.*,
 487 U.S. 500 (1988)..........................................................................................10

*California v. ARC Am. Corp.*,
 490 U.S. 93 (1989).........................................................................................1, 18

*Caterpillar Inc. v. Williams*,
 482 U.S. 386 (1987).........................................................................................5, 6

*Central Iowa Power Coop. v. Midwest Indep. Transmission Sys.
 Operator, Inc.*,
 561 F.3d 904 (8th Cir. 2009) ............................................................................17

*City & Cty. of Honolulu v. Sunoco LP*,
 No. 20-00163, 2021 WL 531237 (D. Haw. Feb. 12, 2021).................................3

*City of Hoboken v. Exxon Mobil Corp.*,
 No. 20-14243, 2021 WL 4077541 (D.N.J. Sept. 8, 2021)..................................3

*Connecticut v. Exxon Mobil Corp.*,
 No. 20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021) .................................3

*Cty. of San Mateo v. Chevron Corp.*,
 __ F.4th__, 2022 WL 1151275 (9th Cir. Apr. 19, 2022) ...........................*passim*

*Delaware ex rel. Denn v. Purdue Pharma L.P.*,
No. 18-383, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ...................................18

*Dougherty v. A. O. Smith Corp.*,
No. 13-1972, 2014 WL 3542243 (D. Del. July 16, 2014)...........................23, 25

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006)................................................................. 15, 16

*Florida Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963).........................................................................7

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
463 U.S. 1 (1983)...........................................................................17

*Friedman v. Rogers*,
440 U.S. 1 (1979)...........................................................................19

*Goepel v. Natl. Postal Mail Handlers Union, a Div. of LIUNA*,
36 F.3d 306 (3d Cir. 1994) ............................................................6, 8

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005).....................................................................4, 16

*Goldman v. Citigroup Glob. Markets Inc.*,
834 F.3d 242 (3d Cir. 2016) ...............................................................16

*In re "Agent Orange" Prod. Liab. Litig*,
635 F.2d 987 (2d Cir. 1980) ...............................................................15

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed
to Def. Ass'n of Phila.*,
790 F.3d 457 (3d Cir. 2015) ...............................................................21

*In re Deepwater Horizon*,
745 F.3d 157 (5th Cir. 2014) ...............................................................23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.
Liab. Litig.*,
MDL No. 2672, 2017 WL 2258757 (N.D. Cal. May 23, 2017)........................18

*Lontz v. Tharp*,
413 F.3d 435 (4th Cir. 2005) ...............................................................16

*Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*,
  49 F.3d 915 (3d Cir. 1995) ...............................................................12

*Maglioli v. All. HC Holdings*,
  16 F.4th 393 (3d Cir. 2021) .................................................................6

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)..............................................................................1

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020).....................................................3

*Massachusetts v. Fremont Inv. & Loan*,
  No. 07-11965, 2007 WL 4571162 (D. Mass. Dec. 26, 2007) .............18

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  __ F.4th __, 2022 WL 1039685 (4th Cir. Apr. 7, 2022), ..........................*passim*

*McKesson v. Doe*,
  141 S. Ct. 48 (2020) ...........................................................................15

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987) ...............................................................................6

*Middlesex Cty. Ethics Comm. v. Garden State bar Ass'n*,
  457 U.S. 423 (1982)............................................................................14

*Minnesota v. Am. Petroleum Inst.*,
  No. 20-1636, 2021 WL 1215656 (D. Minn. Mar. 31, 2021)................3

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) ..............................................................14

*New England Power Generators Ass'n v. Department of Envtl. Prot.*,
  105 N.E.3d 1156 (Mass. 2018) .............................................................8

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const.
Corp. of New Jersey*,
  760 F.3d 297 (3d Cir. 2014) .................................................................6

*New York v. Charter Commc'ns, Inc.*,
  No. 17-1428, 2017 WL 1755958 (S.D.N.Y. Apr. 27, 2017)..............18

*North Carolina ex rel. Stein v. Tinted Brew Liquid Co.*,
 No. 19-886, 2019 WL 5839184 (M.D.N.C. Nov. 7, 2019) ...............................18

*Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*,
 451 U.S. 77 (1981) ................................................................................11

*Ohralik v. Ohio State Bar Assn.*,
 436 U.S. 447 (1978)...............................................................................19

*Papp v. Fore-Kast Sales Co.*,
 842 F.3d 805 (3d Cir. 2016) .......................................................20, 21

*Pennsylvania v. Navient Corp.*,
 967 F.3d 273 (3d Cir. 2020) .................................................................1

*Philadelphia Newspapers v. Hepps*,
 475 U.S. 767 (1986)............................................................................ 19

*Rhode Island v. Chevron Corp.*,
 979 F.3d 50 (1st Cir. 2020).....................................................3, 20, 22

*Rhode Island v. Chevron Corp.*,
 141 S. Ct. 2666 (2021).............................................................................3

*Rodriguez v. Fed. Deposit Ins. Corp.*,
 140 S. Ct. 713 (2020)............................................................................10

*Superior Oil Co. v. Transco Energy Co.*,
 616 F. Supp. 98 (W.D. La. 1985) .......................................................25

*Tafflin v. Levitt*,
 493 U.S. 455 (1990)..............................................................................16

*Treiber & Straub, Inc. v. UPS, Inc.*,
 474 F.3d 379 (7th Cir. 2007) ................................................................9

*Tucker v. Fischbein*,
 237 F.3d 275 (3d Cir. 2001) ...............................................................19

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
 550 U.S. 330 (2007)...............................................................................1

*United Jersey Banks v. Parell*,
   783 F.2d 360 (3d Cir. 1986) ...............................................9

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
   899 F.2d 405 (5th Cir. 1990) .............................................25

*United States v. Oaks*,
   606 F.3d 530 (8th Cir. 2010) .............................................14

*Va. Pharmacy Board v. Va. Consumer Council*,
   425 U.S. 748 (1976)..........................................................19

*Washington v. Monsanto Co.*,
   738 F. App'x 554 (9th Cir. 2018)......................................22

**Statutes and Constitutional Provisions**

28 U.S.C. § 1442(a)(1)...........................................19, 20, 21, 22

43 U.S.C. §§ 1331-1356b ..............................................19, 23

2015 Haw. Sess. Laws Act 117 ............................................7

Mass. Gen. Laws ch. 21N, §§ 1-9........................................8

**Rules**

Fed. R. App. P. 29(a)(2)........................................................1

**Other Authorities**

45 Am. Jur. 2d Judges § 125................................................14

Master Settlement Agreement Between States & Tobacco
   Manufacturers (1998), https://tinyurl.com/3wheh42w ......................13

New Jersey Department of Environmental Protection, *State of New
   Jersey Climate Change Resilience Strategy* (2021),
   tinyurl.com/per6y3va.........................................................7

Rhode Island, *Resilient Rhody: An Actionable Vision for Addressing
   the Impacts of Climate Change in Rhode Island* (2018),
   https://tinyurl.com/2p97hk6h................................................8

## <u>INTERESTS OF</u> *<u>AMICI CURIAE</u>*

The States of New Jersey, Connecticut, Hawaiʻi, Maine, Maryland, New York, Oregon, and Washington, as well as the District of Columbia ("Amici States") file this brief as *amici curiae* in support of Plaintiff-Appellee Delaware. *See* Fed. R. App. P. 29(a)(2).

States are "vested with the responsibility of protecting the health, safety, and welfare of [their] citizens." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007). That responsibility embraces the duty to enact and enforce laws that protect residents from "deception" and "unfair business practices"—"an area traditionally regulated by the States." *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989); *see also, e.g.*, *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 294 (3d Cir. 2020) (observing that "consumer protection is a field that states have traditionally occupied"). And that duty includes States' "well-settled" interest in "combatting the adverse of effects of climate change on their residents." *Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018); *see also, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 522-23 (2007).

This appeal involves traditional state-law causes of action that state courts across the Nation adjudicate every day: violations of state consumer-fraud laws, as well as state common-law claims of negligent failure to warn, trespass, and nuisance. Delaware alleges that Appellants engaged in a decades-long campaign of deception

to mislead consumers about the harmful effects of their products. Delaware alleges these actions violated Delaware state law. And Delaware alleges that these actions caused harm to Delaware and its residents. Such claims fall within the heartland of state-court adjudication, and the result does not change simply because Appellants' products are fossil fuels and their alleged misrepresentations involve climate change.

States have a fundamental sovereign interest in protecting their own residents through enforcement of their own laws in their own courts. Accepting Appellants' theories of removal would directly undermine that interest. This Court should affirm the district court's well-reasoned decision.

## ARGUMENT

Under the venerable "well-pleaded complaint rule," a complaint which pleads only state-law causes of action belongs in state court. That rule applies to this case. Delaware is pursuing a series of state-law claims against Appellants, and no federal-law claim appears on the face of its Complaint. *See* JA444-462 (causes of action). Indeed, the federal courts have consistently rejected efforts like this one to remove cases that seek to hold defendants accountable under state law for alleged deception relating to the climate impacts of their products.[1] This Court should follow that approach and join its sister circuits in rejecting the fossil fuel companies' misplaced attempt to remove Delaware's Complaint to federal court.

Appellants raise a smorgasbord of theories seeking to evade the well-pleaded complaint rule. First, Appellants contend that because Delaware's claims implicate

---

[1] *Cty. of San Mateo v. Chevron Corp.*, __ F.4th__, 2022 WL 1151275, *2 (9th Cir. Apr. 19, 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, __ F.4th __, 2022 WL 1039685, *35 (4th Cir. Apr. 7, 2022); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1275 (10th Cir. 2022); *Rhode Island v. Chevron Corp.*, 979 F.3d 50 (1st Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021); *City of Hoboken v. Exxon Mobil Corp.*, No. 20-14243, 2021 WL 4077541 (D.N.J. Sept. 8, 2021), *appeal filed*, No. 21-2728 (3d Cir. Sept. 14, 2021); *Connecticut v. Exxon Mobil Corp.*, No. 20-1555, 2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 9, 2021); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656, at *6-8 (D. Minn. Mar. 31, 2021), *appeal filed*, No. 21-1752 (8th Cir. Apr. 5, 2021); *City & Cty. of Honolulu v. Sunoco LP*, No. 20-00163, 2021 WL 531237, at *2 n.8 (D. Haw. Feb. 12, 2021), *appeals filed*, Nos. 21-15313 & 21-15318 (9th Cir. Feb. 23, 2021); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 44-45 (D. Mass. 2020).

interstate pollution, those claims "necessarily" "arise under federal law," no matter the fact that Delaware's complaint pleads its claims entirely under state law. Br. 14. Second, Appellants assert that even if Delaware's causes of action "arise under" state law, Delaware's claims "necessarily raise" a "substantial" federal issue. Br. 30-34 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). And finally, Appellants invoke the federal-officer removal statute and the Outer Continental Shelf Lands Act ("OCSLA"). But none of their theories justify removal. Instead, this Court should affirm the district court's remand order and send Delaware state-law claims back to the state court where Delaware chose to file them and where they should thus be adjudicated.

## I. DELAWARE'S CLAIMS ARISE UNDER STATE LAW, NOT UNDER FEDERAL COMMON LAW.

Appellants primarily argue that Delaware's claims necessarily "arise under" federal common law, even though they were expressly pleaded under state law, because Delaware's claims implicate a "uniquely federal interest." Br. 14-15. Their theory fails for two independently sufficient reasons. First, their argument is simply a repackaged preemption defense—*i.e.*, that they cannot be held accountable under state law because a federal common law applies instead. But that is a defense which goes to the merits of Delaware's suit, not a basis to assert that Delaware's state-law claims really arise under federal law. Second, even accepting Appellants' theory, the federal common law of interstate pollution is defunct, and in any event, never applied

to Delaware's claims, which do not seek to regulate cross-border emissions. Finally, there is no reason to fear the result of this analysis, because state courts are capable of handling the federal-law preemption defenses that Appellants plan to raise on the merits—which they can do once the claims are properly remanded.

A.    <u>Removal Cannot Rest On Federal Common Law Preemption Defenses</u>.

Appellants' novel argument—that Delaware's claims actually "arise under" the federal common law for interstate air pollution—finds no support in hornbook civil procedure. To decide what body of substantive law a particular claim "arises under," federal courts must review "the face of the properly pleaded complaint" to determine whether each claim is being brought pursuant to state or federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 386 (1987). Here, there is no dispute that Delaware's Complaint is alleging exclusively state-law causes of action. In short, "[b]ecause [the] Complaint does not propose a new federal cause of action, never alleges an existing federal common law claim, and only brings claims originating under [Delaware] law, the district court never had subject-matter jurisdiction under the well-pleaded complaint rule." *Baltimore*, 2022 WL 1039685, at *5; *see also San Mateo*, 2022 WL 1151275, at *4 (same).

Despite Delaware's decision to bring state-law claims alone, Appellants urge this Court to consider whether federal common law would really govern instead. But as the district court recognized, however Appellants frame it, their arguments that

federal common law must govern *instead of* the state-law claims Delaware actually chose to plead are "simply veiled … preemption arguments." JA35. That proves fatal, because "a case may not be removed on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated." *Caterpillar*, 482 U.S. at 386; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (agreeing that because preemption is ordinarily a defense, it "does not authorize removal to federal court"); *Maglioli v. All. HC Holdings,* 16 F.4th 393, 407 (3d Cir. 2021). As other circuits have reasoned when rejecting analogous arguments, "ordinary preemption" like this "can never serve as a basis for removal." *Boulder*, 25 F.4th at 1261.

There is only one exception to this rule, but it is inapposite. As this Court has found, removal based on a preemption defense is appropriate only "where Congress has expressed its intent to *completely preempt* a particular area of law such that any claim that falls within this area is necessarily federal in character." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (emphasis added). Said another way, although Appellants argue that these Delaware law claims are *actually* federal common law claims, "the only state claims that are 'really' federal claims and thus removable to federal court are those that are preempted completely by federal law." *Goepel v. Natl. Postal Mail Handlers Union, a Div. of LIUNA*, 36 F.3d 306, 311-12 (3d Cir. 1994). As the Tenth Circuit put the point, it follows that "a state lawsuit brought under state law in the

transboundary pollution context could be removed by means of a federal question only through the doctrine of complete preemption." *Boulder*, 25 F.4th at 1261.

Here, however, no recognized area of complete preemption applies. Indeed, as the district court noted, "Defendants disclaim any intent to show such complete preemption." JA37. For good reason: this is a "rare doctrine" that the Supreme Court has acknowledged "in just three statutory contexts: § 301 of the Labor Management Relations Act, § 502 of ERISA, and usury actions under the National Bank Act." *Boulder*, 25 F.4th at 1257; *see San Mateo*, 2022 WL 1151275, at *6. This context does not offer a fourth. After all, "Congress has not clearly manifested an intent that the federal common law for transboundary pollution will completely preempt state law," a recognition that follows at minimum from the fact that "federal common law is created by the judiciary—not Congress." *Boulder*, 25 F.4th at 1262; *see also, e.g.*, *Am. Fuel*, 903 F.3d at 913 (finding it "settled that the states have a legitimate interest in combatting the adverse effects of climate change on their residents").[2] That ends

---

[2] Indeed, many Amici States have enacted measures to address the impacts of climate change. For example, last year New Jersey issued its Climate Change Resilience Strategy, setting forth actions to maximize the State's resilience to the effects of climate change. *See* N.J. Dep't of Envtl. Protection, *State of New Jersey Climate Change Resilience Strategy* (2021), tinyurl.com/per6y3va. Hawaiʻi's Act 117 of 2015 recognized that the State's beaches "are disappearing at an alarming rate" and thus authorized the use of transient accommodation tax revenues for beach conservation and restoration. *See* 2015 Haw. Sess. Laws Act 117. Massachusetts has also taken a variety of steps to address climate change, including enacting the Global Warming Solutions Act in 2008 "to address the grave threats climate change poses

the inquiry; because Delaware's "reliance on only state-law claims leaves complete preemption as the sole path for federal removal," and because Appellants expressly waived such an argument and it is otherwise unavailable, the well-pleaded complaint rule controls. *Boulder*, 25 F.4th at 1261.

Undeterred, Appellants urge this Court to create a new exception to the well-pleaded rule for any cases that implicate the federal common law for interstate air pollution. Br. 23-24. But as the district court reasoned, "[n]either the Supreme Court nor the Third Circuit has held that a complaint expressly asserting state-law claims that happen to implicate federal common law can create an additional exception to the well-pleaded complaint rule." JA35. To the contrary, "[i]t is *only* when the merits of a defense based on 'complete preemption' are considered that the court is free to look behind the plaintiff's chosen claims to determine whether federal law has completely preempted the area." *Boulder*, 25 F.4th at 1261. That is consistent with the law of this circuit, which (as noted above) confirms that "the only state claims that are '*really*' federal claims and thus removable to federal court are those that are preempted completely by federal law." *Goepel*, 36 F.3d at 311-12 (emphasis added).

---

to the health, economy, and natural resources of the Commonwealth," *New England Power Generators Ass'n v. Department of Envtl. Prot.*, 105 N.E.3d 1156, 1157 (Mass. 2018) (citing Mass. Gen. Laws ch. 21N, §§ 1-9). And Rhode Island produced a detailed study on the impacts of climate change in its territory, which contains numerous recommendations for increasing the state's resiliency. *See* Rhode Island, *Resilient Rhody: An Actionable Vision for Addressing the Impacts of Climate Change in Rhode Island* (2018), https://tinyurl.com/2p97hk6h.

So while Appellants argue that their claim (a) is "really" one under federal common law (b) *without* proving complete preemption, that theory is unavailable.

Nor do the cases that Appellants cite support such an improper expansion of federal jurisdiction. As the district court explained, the cases that Appellants cite all either involve plaintiffs that expressly pleaded a federal cause of action or involve federal subject-matter jurisdiction on grounds independent of a federal question. *See* JA35-36. For example, Appellants invoke *Treiber & Straub, Inc. v. UPS, Inc.*, 474 F.3d 379 (7th Cir. 2007), for the proposition "that claims 'aris[ing] under federal common law … fall [] within the district court's federal question jurisdiction,' even when plaintiffs use state-law labels to try to obscure their claims' federal nature." Br. 23-24 (quoting *Treiber*, 474 F.3d at 383-84, 398). But *Treiber* was filed in federal court and neither the well-pleaded complaint doctrine nor removal were at issue. Moreover, although Appellants cite this Court's decision in *United Jersey Banks v. Parell*, 783 F.2d 360 (3d Cir. 1986), to argue that Delaware cannot "artfully plead" its federal claims as state law claims, *see* Br. 26, they overlook that, in the same case, this Court reaffirmed that "[t]he fact that [a plaintiff's] claim under state law may be defeated because of the preemptive effect of [federal law] does not mean that such federal laws provide the basis of the cause of action." 783 F.2d at 367-68. In short, "the general rule [is] that federal jurisdiction will not be found when the complaint states a prima facie claim under state law." *Id.* That rule applies here.

Appellants are certainly free to argue on the merits that federal common law preempts Delaware's state-law claims. But the extraordinary and unsupported theory Appellants press here cannot justify brushing past the well-pleaded complaint rule to remove this case to federal court.

B.    <u>Federal Common Law Does Not Apply</u>.

Even assuming that federal common law *could* justify removal, it cannot do so in this case. The scenarios in which federal common law preempts state law are exceedingly rare. As the Supreme Court has explained, "[t]he cases in which federal courts may engage in common lawmaking are few and far between." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 716 (2020). Even rarer are those "few areas, involving 'uniquely federal interests,' [that] are so committed by the Constitution and the laws of the United States to federal control that state law is pre-empted and replaced" by federal common law. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) (citation omitted). For two reasons, no such body of federal common law applies here: the federal common law for interstate air pollution is defunct and, even if it were not, no court has ever held that this alleged body of federal common law preempts consumer protection and tort claims like Delaware's.

Appellants' effort to seek removal on the basis of a supposed federal common law of interstate emissions is particularly inapt because no such common law exists. Whatever preemptive effect federal common law may have once had in the field of

interstate emissions, that body of judge-made law was wholly "displace[d]" by the "Clean Air Act and the EPA actions it authorizes" instead. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (*AEP*). After all, "when Congress addresses a question previously governed by a decision rested on federal common law ... the need for such an unusual exercise of law-making by federal courts disappears." *Id.* at 423 (citation omitted). It follows that federal common law cannot preempt state-law claims, much less convert them into federal claims for jurisdictional purposes. *See Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 n.34 (1981) (noting if Congress displaces the common law, "the task of the federal courts is to interpret and apply statutory law, not create common law").

The Clean Air Act's displacement of the very federal common law on which Appellants rely is thus independently fatal to their leadoff jurisdictional argument. This Court could only accept Appellants' position by adopting the "extraordinary" view that "removal is proper based on federal common law even when the federal common law claim has been deemed displaced, extinguished, and rendered null by the Supreme Court"—a claim that "defies logic." *Baltimore*, 2022 WL 1039685, at *10; *see also id.* (identifying lack of "authority justifying removal for nonexistent claims that have been displaced by federal statutes"); *Boulder*, 25 F.4th at 1260 (agreeing that "this case could not have been removed to federal court on the basis of federal common law that no longer exists") (citation omitted); *San Mateo*, 2022

WL 1151275, at *5. This Court should likewise refuse to "provide Defendants with the unprecedented opportunity to obtain removal based on a nonexistent theory of federal common law when its viability is no longer open to discussion as a means of federal relief." *Baltimore*, 2022 WL 1039685, at *10 (citation omitted).

Nor would there be a conflict with federal common law in any event. *See, e.g.*, *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 920 (3d Cir. 1995) (asking whether there would be "a significant conflict" between "a uniquely federal interest" and "the operation of state law"). Even when federal common law for interstate air pollution existed, it extended only to lawsuits that actually had the purpose and effect of regulating out-of-state emissions. *See AEP*, 564 U.S. at 419 (seeking "injunctive relief" that would "requir[e] each defendant 'to cap its carbon dioxide emissions and then reduce them by a specified percentage each year for at least a decade'"). But here, Delaware's complaint does not seek to limit or otherwise regulate Appellants' emissions or their production of fossil fuels.

Rather, Delaware seeks only traditional state-law remedies associated with the harm Appellants have caused by their alleged deceptive conduct in promoting their fossil fuel products. That is why Delaware's complaint does "not merely allege that Defendants contributed to climate change and its attendant harms by producing and selling fossil-fuel products; it is the concealment and misrepresentation of the products' known dangers" that grounds Delaware's state-law theory. *Baltimore*,

2022 WL 1039685, at *32; *see also San Mateo*, 2022 WL 1151275, at *4-6. And for that reason, Delaware's lawsuit will not compel Appellants to reduce emissions, alter the current federal-state balance in regulation of climate change, or implicate foreign affairs. Instead, Delaware's suit will do exactly what other state consumer protection and common law tort suits have done: allow the State to obtain relief for Appellants' deceptive commercial conduct, force Appellants to bear the costs of remediating harms from their own prior deceptive conduct, and incentivize Appellants to avoid deception going forward.[3] That is the comfortable domain of a state-law cause of action, and (even assuming the alleged federal common law were not defunct) would not conflict with any unique federal interest.

C.    State Courts Are Well Suited To Address These Defenses.

Appellants and their amici make a number of consequentialist arguments that suggest this case *must* be heard in federal court to ensure their federal common law defenses are fairly assessed. Their arguments include direct assaults on the authority,

---

[3] In this respect, this case is analogous to the watershed litigation against tobacco companies for unlawful deceptive practices, which resulted in a settlement between the tobacco companies and forty-six States. Their Settlement Agreement prohibits "material misrepresentations of facts regarding the health consequences of using any Tobacco Product," prohibits several deceptive advertising practices, and requires the tobacco companies to compensate States for health-care costs related to smoking— but does not prohibit or regulate the production or consumption of tobacco products. *See* Master Settlement Agreement Between States & Tobacco Manufacturers at 10-19 (1998), https://tinyurl.com/3wheh42w.

competence, and trustworthiness of state courts, including the arguments that "[s]tate courts have no business deciding how global climate change should be addressed," Br. of Indiana et al. at 12, and that they will act merely "at the behest of a handful of state and local governments," rather than review the arguments fairly, *id.* at 14. Not only are those bald assertions irrelevant, *see BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021) (noting, in the context of a jurisdictional provision, that "even the most formidable policy arguments cannot overcome a clear statutory directive" (citation omitted)), they are wholly inaccurate.

First, amici's offensive speculation that "at least some courts" will not apply the law correctly, Br. of Indiana et al. at 13, merits no credence. The law presumes judicial impartiality and imposes a heavy burden on any parties attempting to show otherwise. *See United States v. Oaks*, 606 F.3d 530, 537 (8th Cir. 2010); 45 Am. Jur. 2d Judges § 125. It is well settled that "[m]inimal respect for the states processes ... precludes any *presumption* that state courts will not safeguard federal constitutional rights." *Middlesex Cty. Ethics Comm. v. Garden State bar Ass'n*, 457 U.S. 423, 431 (1982). And "the 'claim of sovereign protection from removal arises in its most powerful form,'" where, as here, the action sought to be removed is one brought by a state in state court to enforce its own law. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (citation omitted). This Court can thus have "confiden[ce]" that Delaware's courts "can capably adjudicate claims arising under their own laws

that fail to otherwise provide any federal jurisdiction," *Baltimore*, 2022 WL 1039685 at *35, just as state courts handle a range of other important consumer protection claims that involve national or international policy issues, *see infra* at 19.

It is likewise of no moment that different courts in different states applying different consumer protection and tort laws might come to different conclusions. *See* Br. of Indiana et al. at 13. Rather, it is the ordinary consequence of sovereign States acting within their spheres. *Cf. In re "Agent Orange" Prod. Liab. Litig*, 635 F.2d 987, 994-95 (2d Cir. 1980) ("The fact that application of state law may produce a variety of results is of no moment. It is in the nature of a federal system that different states will apply different rules of law, based on their individual perceptions of what is in the best interests of their citizens."). And if Appellants face multiple such suits, it is because their actions have caused multiple harms in multiple States.

Finally, there is nothing unusual about state courts ruling on matters involving preemption. A possible preemption defense does not change this reality; state courts are more than "competent to apply federal law, to the extent it is relevant." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006); *see also McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) ("Our system of 'cooperative judicial federalism' presumes federal and state courts alike are competent to apply federal and state law."). Indeed, as the Fourth Circuit aptly observed, deciding whether federal law preempts state law "is a serious obligation, and not something that federal courts

may easily take for themselves." *Lontz v. Tharp*, 413 F.3d 435, 442 (4th Cir. 2005). To conclude otherwise would "denigrate the respect accorded coequal sovereigns." *Tafflin v. Levitt*, 493 U.S. 455, 466 (1990). And there is no basis to diverge from the traditional rules of removal to prevent them from hearing such defenses here.

## II. THERE IS NO JURISDICTION UNDER *GRABLE*.

Appellants next argue that federal jurisdiction is appropriate under the narrow exception in *Grable*, 545 U.S. 308. *See* Br. 30-34. For *Grable* jurisdiction to apply, the complaint must include a federal question that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016). Given the stringent nature of that test, *Grable* encompasses only a "slim category" of removable cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). As every circuit to consider the question has held, *Grable* does not apply. *See Baltimore*, 2022 WL 1039685, at *11-15; *San Mateo*, 2022 WL 1151275, at *4-6; *Boulder*, 25 F.4th at 1265-71. This Court should reach the same conclusion.

Appellants do not even attempt to satisfy *Grable*'s four-part test. As to the first prong, for example, "a federal issue is necessarily raised only when a federal question is a necessary element of one of the pleaded state-law claims within a plaintiff's complaint." *Baltimore*, 2022 WL 1039685, at *12 (citing *Franchise Tax*

*Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983)). To carry their burden, Appellants must point to the "specific elements of [plaintiff's] state law claims that require proof that [federal law] was violated and explain why that proof is necessary." *Central Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 914 (8th Cir. 2009). But Appellants make no such effort here. Rather than go through the elements of Delaware's claims, Appellants instead make vague assertions that Delaware's causes of action "deal with air and water in their ambient or interstate aspects," Br. 31-32, but those vague assertions fall well short of their burden. That is because they have no other choice; Delaware can easily prevail on its deceptive conduct claims "without proving any issue of federal law because the success of those claims is grounded in traditional state-law causes of action and does not depend on any federal policy or regulation." *Boulder*, 25 F.4th at 1267; *see also San Mateo*, 2022 WL 1151275, at *4-6. In other words, "[i]f these federal issues are raised, it will be by [Appellants] as potential defenses," not as part of the claims themselves. *Boulder*, 25 F.4th at 1267.

There is nothing odd about that conclusion. States regularly seek redress under their laws and in their courts for false and misleading advertising, disinformation, failure to warn, and deceptive product promotion. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 150 (1963) (noting "traditional [state] power to enforce ... regulations designed for the protection of consumers"); *California v. ARC*

*Am. Corp.*, 490 U.S. 93, 101 (1989) (preventing unfair business practices and consumer deception is "an area traditionally regulated by the States"). That remains true even where the action touches on an issue of national or international concern. Thus, courts have rejected efforts to remove state enforcement actions relating to the subprime mortgage lending crisis, *Massachusetts v. Fremont Inv. & Loan*, No. 07-11965, 2007 WL 4571162 (D. Mass. Dec. 26, 2007); the opioid epidemic, *Delaware ex rel. Denn v. Purdue Pharma L.P.*, C.A. No. 18-383, 2018 WL 1942363, at *4-5 (D. Del. Apr. 25, 2018); use by vehicle manufacturers of devices to evade emissions tests, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 2258757 (N.D. Cal. May 23, 2017); deceptive marketing of tobacco products, *North Carolina ex rel. Stein v. Tinted Brew Liquid Co.*, No. 19-886, 2019 WL 5839184 (M.D.N.C. Nov. 7, 2019); and unfair practices by Internet service providers, *see New York v. Charter Commc'ns, Inc.*, No. 17-1428, 2017 WL 1755958 (S.D.N.Y. Apr. 27, 2017). In each case, however important the national policy area, it was not a necessary part of the state law cause of action, and therefore *Grable* did not authorize removal of the state law claims to federal courts.

Appellants' suggestion that removal is necessary because Delaware's claims purportedly implicate First Amendment issues, Br 33-34, is puzzling. Classic state-law causes of action like defamation routinely involve First Amendment issues, yet have never been removable to federal court on that basis alone. JA42-43 (rejecting

First Amendment theory); *see Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001)

(noting "defamation … is fundamentally a state cause of action"). Recognizing that

much, Appellants concede (as they must) that state-law misrepresentation claims are

not typically removable, but suggest the result should be different here because this

case "implicates … broader federal interests." Br. 34. In other words, they argue that

it is somehow the *combination* of its illusory federal common law concerns and First

Amendment interests that warrant removal. But nothing in *Philadelphia Newspapers*

*v. Hepps*, 475 U.S. 767 (1986)—Appellants' sole claimed authority—supports that

result. *Hepps* did not involve removal at all; to the contrary, there the Supreme Court

reviewed a decision arising from state court. *Id.* at 779. And were that not enough,

there is no serious First Amendment question in this case in the first place. After all,

Delaware's lawsuit implicates the States' longstanding and constitutional authority

to regulate dishonesty in commercial speech. *See Friedman v. Rogers*, 440 U.S. 1,

10 (1979); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 462 (1978); *Va. Pharmacy*

*Board v. Va. Consumer Council*, 425 U.S. 748 (1976)).

## III.   APPELLANTS' ALLEGED TIES TO FEDERAL OFFICERS OR THE OUTER CONTINENTAL SHELF DO NOT WARRANT REMOVAL.

Appellants also claim that their ties to the federal government's oil production

and their leases with the United States at the outer continental shelf justify removal

under 28 U.S.C. § 1442(a)(1) and 43 U.S.C. §§ 1331-1356b, respectively. *See* Br.

35-69. But every circuit to consider these theories has rejected them. *See Baltimore*,

2022 WL 1039685, *26-34 (federal officer); *id.* at *19-22 (OCSLA); *Boulder*, 25 F.4th at 1250-54 (federal officer); *id.* at 1272-75 (OCSLA); *Rhode Island*, 979 F.3d at 59-60 (federal officer); *San Mateo*, 2022 WL 1151275, *11-15 (federal officer); *id*. at *8-11 (OCSLA). For good reason: Delaware's claims specifically target the deceptive marketing of fossil fuel products, not their extraction, and Delaware has in fact "disclaim[ed] injuries arising on federal property and those that arose from Defendants' provision of fossil fuel products to the federal government, and seeks no recovery or relief attributable to such injuries." JA254. This Court should thus reject Appellants' strained jurisdictional theories.

Section 1442(a)(1) authorizes the removal of an action brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." A private entity seeking removal under § 1442(a)(1) must therefore establish each of the following elements: (1) it is a "person" under the statute; (2) the plaintiff's claims are based on the defendant's conduct acting under a federal officer; (3) the plaintiff's claims are for, or relating to, an act under color of federal office; and (4) the defendant raises a colorable federal defense. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 (3d Cir. 2016). The second and third prongs, together, mean that federal-officer removal is available only to those entities acting under "unusually close" federal supervision when those

entities face claims with a nexus to the work they did for the United States. *See In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 464, 469, 472 (3d Cir. 2015) (citation omitted); *Papp*, 842 F.3d at 811 (finding the "central aim" of federal-officer removal is to protect contractors working under a federal officer from "interference" by litigation in state courts for any claims that overlapped with their supervised conduct).

Other circuits have had little trouble finding that Appellants here fail to meet either the second or third prongs of this analysis—that is, they can establish neither a sufficiently close supervisory relationship nor a nexus between work for the federal government and Delaware's claims. As to the former, Appellants can only point to a range of agreements with the United States that "seem typical of any commercial contract and are incidental to sale and sound in quality assurance"—the very sort of "arm's-length business relationship" that fails to demonstrate sufficient supervision by the Federal Government to justify removal under Section 1442(a)(1). *San Mateo*, 2022 WL 1151275, at *15 (explaining "the leases do not require that lessees act on behalf of the federal government, under its close direction, or to fulfill basic governmental duties"); *Boulder*, 25 F.4th at 1250-54 (likewise rejecting application of Section 1442(a)(1) given the lack of sufficient supervision by a federal officer).

Regarding the question of nexus, Appellants come up empty. Here, they must establish that the culpable behavior described in the complaint actually overlaps with

the government-directed conduct. Because Delaware's state-law claims are based on Appellants' efforts to deceive consumers about the risks of their products, federal-officer removal is only proper if Appellants' *deceptions* were made pursuant to a government contract or at the direction of the federal officer. *See Baltimore*, 2022 WL 1039685, \*31 (noting defendants must establish nexus between federal direction and the "concealment and misrepresentation of the products' known dangers"). But Appellants do not and cannot contend the federal government had any involvement whatsoever in their deception campaigns. So, although Appellants' arguments may "have the flavor of federal officer involvement in the oil companies' business," "that mirage only lasts until one remembers what [the plaintiff] is alleging in its lawsuit." *Rhode Island*, 979 F.3d at 59-60; *see also Baltimore*, 2022 WL 1039685, \*31-32 (because state-law claim is tied to a "sophisticated disinformation campaign … the relationship between [the plaintiff's] claims and any federal authority over a portion of certain Defendants' production and sale of fossil-fuel products is too tenuous to support removal under § 1442"). [4]

---

[4] There is nothing surprising about this. Indeed, in other contexts, federal courts have confirmed the federal government's decision to purchase products from a company does not make it the regulator of the company's product in the retail market or the author of messages to the consuming public. For example, other federal courts have rejected efforts by Monsanto to remove state-law complaints in state courts alleging the company made products containing polychlorinated biphenyls (PCBs) because the federal government had merely purchased a product from Monsanto and had not directed Monsanto to conceal the toxicity of PCBs from consumers. *See Washington v. Monsanto Co.*, 738 F. App'x 554 (9th Cir. 2018).

In addition to Appellants' shortcomings as to supervision and nexus, there is a third problem: "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Dougherty v. A. O. Smith Corp.*, No. 13-1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014) (collecting cases). That applies here: Delaware has expressly disclaimed in its complaint any injuries that "arose from [Appellants'] provision of fossil fuel products to the federal government." JA254. Appellants are thus seeking removal based on grossly-attenuated connections to federal officers that, regardless, Delaware has expressly disclaimed. Federal-officer removal does not apply.

Appellants' activities on the outer continental shelf ("OCS") similarly lack any relationship with Delaware's claims, so OCSLA provides no basis for removal. OCSLA creates federal jurisdiction over cases "arising out of, or in connection with [...] any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). For OCSLA to apply, the "activities that caused the injury" alleged must have been an "operation" that was "conducted on the outer Continental Shelf" and the litigation must "arise[] out of, or in connection with" that operation." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014).

The state-law claims therefore "must have a sufficient nexus to an operation on the [outer continental shelf] to fall within the jurisdictional reach of the OCSLA." *Boulder*, 25 F.4th at 1273; *see also, e.g.*, *Baltimore*, 2022 WL 1039685, at *20; *San Mateo*, 2022 WL 1151275, at *9. Here, the conduct Delaware alleges is "unlawfully marketing, promoting, and ultimately selling [Appellants'] fossil-fuel products" to consumers, "which includes their collective failure to warn the public of the known dangers associated with their fossil-fuel products." *Baltimore*, 2022 WL 1039685 at *21. That alleged misconduct has "no direct connection to [Appellants'] production of fossil fuels on the OCS," and is "removed several steps" from OCSLA's domain. *Boulder*, 25 F.4th at 1274; *see also Baltimore*, 2022 WL 1039685, at *21 (noting "irrespective of Appellants' activities on the OCS, [the plaintiff's] injuries still exist as a result of that distinct marketing conduct," such that the claims are "far removed from any production occurring on the OCS" and that there is a "weak relationship" between the case and OCSLA); *San Mateo*, 2022 WL 1151275, at *8 (finding that "the connection between such conduct and the injuries alleged by the plaintiffs here is too attenuated to give rise to jurisdiction" under OCSLA).

Appellants' responses are unavailing. Although they contend this suit might have downstream impacts on their work on the OCS, "it is difficult to see how such a prospective theory of negative economic incentives—flowing from a lawsuit that does not directly attack OCS exploration, resource development, or leases—is

anything other than contingent and speculative." *Boulder*, 25 F.4th at 1275. And in any event, that argument is unmoored from "the OCSLA's text and judicial decisions applying it." *Baltimore*, 2022 WL 1039685, at *22.[5] Moreover, the cases Appellants cite are more directly related to operations on the OCS and provide no support for removal here. *See, e.g.*, *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405 (5th Cir. 1990) (concerning a pipeline which "transports gas from the outer continental shelf"); *Superior Oil Co. v. Transco Energy Co.,* 616 F. Supp. 98 (W.D. La. 1985) (concerning contracts for sale of gas produced on the outer continental shelf). The cited cases simply confirm what the Fourth Circuit already identified— that every precedent to find OCSLA removal "feature[s] either claims with a direct physical connection to an OCS operation (collision, death, personal injury, loss of wildlife, toxic exposure) or a contract or property dispute directly related to an OCS operation." *Boulder*, 25 F.4th at 1273. This is not such a case.

---

[5] Further, Delaware explicitly "disclaim[ed] injuries arising on federal property"— that is, injuries arising from operations conducted on the OCS. JA254. As with Appellants' failed invocation of federal officer removal, Appellants cannot sustain removal on the basis of conduct Delaware has expressly disclaimed. *See Dougherty*, 2014 WL 3542243, at *10 (collecting cases).

## **CONCLUSION**

For these reasons, this Court should affirm the order remanding this action to the Delaware Superior Court.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY

By:     /s/ Aaron Kleinbaum
           Aaron Kleinbaum
           Assistant Attorney General
           Aaron.Kleinbaum@law.njoag.gov

</div>

Date: April 21, 2022

| | |
|---|---|
| WILLIAM TONG<br>*Attorney General*<br>*State of Connecticut*<br>165 Capitol Avenue<br>Hartford, CT 06106 | KARL A. RACINE<br>*Attorney General*<br>*District of Columbia*<br>400 6th Street, NW, Suite 8100<br>Washington, D.C. 20001 |
| HOLLY T. SHIKADA<br>*Attorney General*<br>*State of Hawaiʻi*<br>425 Queen Street<br>Honolulu, HI 96813 | AARON M. FREY<br>*Attorney General*<br>*State of Maine*<br>6 State House Station<br>Augusta, ME 04333-0006 |
| BRIAN E. FROSH<br>*Attorney General*<br>*State of Maryland*<br>200 St. Paul Place<br>Baltimore, MD 21202 | MAURA HEALEY<br>*Attorney General*<br>*Commonwealth of Massachusetts*<br>1 Ashburton Place, 18th Floor<br>Boston, MA 02108 |

*(Counsel list continues on next page)*

- 26 -

## **CONCLUSION**

For these reasons, this Court should affirm the order remanding this action to the Delaware Superior Court.

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY

By:    /s/ Aaron Kleinbaum
Aaron Kleinbaum
Assistant Attorney General
Aaron.Kleinbaum@law.njoag.gov

Date: April 21, 2022

| | |
|---|---|
| WILLIAM TONG<br>*Attorney General*<br>*State of Connecticut*<br>165 Capitol Avenue<br>Hartford, CT 06106 | KARL A. RACINE<br>*Attorney General*<br>*District of Columbia*<br>400 6th Street, NW, Suite 8100<br>Washington, D.C. 20001 |
| HOLLY T. SHIKADA<br>*Attorney General*<br>*State of Hawaiʻi*<br>425 Queen Street<br>Honolulu, HI 96813 | AARON M. FREY<br>*Attorney General*<br>*State of Maine*<br>6 State House Station<br>Augusta, ME 04333-0006 |
| BRIAN E. FROSH<br>*Attorney General*<br>*State of Maryland*<br>200 St. Paul Place<br>Baltimore, MD 21202 | MAURA HEALEY<br>*Attorney General*<br>*Commonwealth of Massachusetts*<br>1 Ashburton Place, 18th Floor<br>Boston, MA 02108 |

*(Counsel list continues on next page)*

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

JOSH SHAPIRO
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504-0100

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am a member in good standing of the bar of the United States

Court of Appeals for the Third Circuit.

/s/ Aaron Kleinbaum
Aaron Kleinbaum
Assistant Attorney General
Aaron.Kleinbaum@law.njoag.gov


Date: April 21, 2022

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) and L.A.R. 31.1(c), I certify that:

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because the brief contains 6,402, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and thus does not exceed the 6,500-word limit.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been pre red in a proportionally spaced typeface using the Microsoft Word word-processing system in Times New Roman that is at least 14 points.

3.     Pursuant to Local Appellate Rule 31.1(c), I certify that the text of the electronic brief is identical to the text of the paper copies.

4.     This brief complies with L.A.R. 31.1(c) in that prior to being electronically mailed to the Court today, it was scanned by the following virus detection software and found to be free from computer viruses:

Company: McAfee, Inc.
Product: McAfee Endpoint Security,
version 10.7.0.3199

/s/ Aaron Kleinbaum
Aaron Kleinbaum
Assistant Attorney General
Aaron.Kleinbaum@law.njoag.gov

Date: April 21, 2022

## CERTIFICATION OF SERVICE

I hereby certify that on April 21, 2022, I caused the foregoing Appellee's Brief to be filed with the Clerk of the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system, which filing effected service upon counsel of record through the CM/ECF system.

<div style="margin-left: 40%;">

/s/ Aaron Kleinbaum
Aaron Kleinbaum
Assistant Attorney General
Aaron.Kleinbaum@law.njoag.gov

</div>

Date: April 21, 2022