Nos. 21-2728, 22-1096

# United States Court of Appeals for the Third Circuit

CITY OF HOBOKEN,
*Plaintiff-Appellee,*

v.

CHEVRON CORPORATION, *et al.,*
*Defendants-Appellants.*

On Appeal from an Order
of the United States District Court
for the District of New Jersey (20-cv-14243)

STATE OF DELAWARE, *ex rel.* KATHLEEN JENNINGS,
ATTORNEY GENERAL OF THE STATE OF DELAWARE,
*Plaintiff-Appellee,*

v.

BP AMERICA INC., *et al.,*
*Defendants-Appellants.*

On Appeal from an Order
of the United States District Court
for the District of Delaware (20-cv-1429)

## PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION TO STAY MANDATES

Christian Douglas Wright
Director of Impact Litigation
Jameson A.L. Tweedie
Ralph K. Durstein III
Deputy Attorneys General
DELAWARE DEPARTMENT OF JUSTICE
820 N. French Street
Wilmington, DE 19801
(302) 577-8600
christian.wright@delaware.gov
jameson.tweedie@delaware.gov
ralph.durstein@delaware.gov

Victor M. Sher
Matthew K. Edling
Stephanie D. Biehl
Martin D. Quiñones
SHER EDLING LLP
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
(628) 231-2500
vic@sheredling.com
matt@sheredling.com
stephanie@sheredling.com
marty@sheredling.com

*Counsel for Plaintiff–Appellee the State of Delaware*
*[Additional counsel listed on signature page]*

# TABLE OF CONTENTS

<u>Page</u>

**INTRODUCTION** ....................................................................... 1

**LEGAL STANDARDS** ................................................................. 2

**ARGUMENT** .............................................................................. 3

    I.    There Is No Good Cause for a Stay Because Appellants Have Not Shown or Attempted to Show They Will Likely Suffer Irreparable Harm Absent Staying the Mandate. ......................... 3

    II.   There Is No Substantial Issue Because Appellants Are Not Likely to Succeed in Their Certiorari Petition or on the Merits Before the Supreme Court. ............................................... 10

        A.    Appellants' Purported Split Among Circuits Is Illusory. ...... 10

        B.    The Supreme Court's Recent Request to the Solicitor General for the Views of the United States Does Not Help Appellants. .................................................................... 14

**CONCLUSION** ......................................................................... 17

**CERTIFICATE OF COMPLIANCE** ..................................... 20

**CERTIFICATE OF SERVICE** ............................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
  977 F.3d 1379 (Fed. Cir. 2020)...................................................................4

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
  25 F.4th 1238 (10th Cir. 2022)..............................................11, 13, 14

*City & Cnty. of Honolulu v. Sunoco LP,*
  39 F.4th 1101 (9th Cir. 2022)...............................................................11

*City & Cnty. of Honolulu v. Sunoco LP,*
  No. 21-15313, 2021 WL 1017392 (9th Cir. Mar. 13, 2021) ...................4

*City of New York v. Chevron Corp.,*
  993 F.3d 81 (2d Cir. 2021).....................................................................13

*City of Oakland v. BP PLC,*
  969 F.3d 895 (9th Cir. 2020) .................................................................12

*Cnty. of San Mateo v. Chevron Corp.,*
  32 F.4th 733 (9th Cir. 2022)............................................................11, 12

*Conkright v. Frommert,*
  556 U.S. 1401 (2009) .......................................................................15, 17

*de Csepel v. Hungary,*
  Civ. No.10-1261 (JDB), 2022 WL 3026998 (D.D.C. Aug. 1, 2022).......17

*Grable & Sons Metal Products, Inc. v. Darue Engineering &*
  *Manufacturing.,*
  545 U.S. 308 (2005) ...............................................................................12

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck*
  *Drivers Local No. 70,*
  415 U.S. 423 (1974) .................................................................................7

*Gunn v. Minton,*
  568 U.S. 251 (2013) ...............................................................................12

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) ................................................................. 2

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) .............................................. 3, 4

*Maryland v. King*,
  567 U.S. 1301 (2012) .............................................................. 2

*Mayor & City Council of Balt. v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ....................................... 11, 13

*Nara v. Frank*,
  494 F.3d 1132 (3d Cir. 2007) ....................................... *passim*

*New SD, Inc. v. Rockwell International Corp.*,
  79 F.3d 953 (9th Cir. 1996) ................................................ 12

*Philip Morris USA Inc. v. Scott*,
  561 U.S. 1301 (2010) .............................................................. 2

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
  415 U.S. 1 (1974) ............................................................... 4, 5

*Rhode Island v. Shell Oil Prods. Co.*,
  35 F.4th 44 (1st Cir. 2022) ......................................... 11, 13

*Ruckelshaus v. Monsanto Co.*,
  463 U.S. 1315 (1983) .............................................................. 3

*Sam L. Majors Jewelers v. ABX*, Inc.,
  117 F.3d 922 (5th Cir. 1997) ............................................. 12

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................. 4

*Suncor Energy (U.S.A.) Inc. v. Board of County Commissioners of Boulder County*,
  No. 21-1550 (U.S.) (Oct. 3, 2022) ...................................... 14

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  572 U.S. 1301 (2014) ........................................... 9, 10, 17

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  572 U.S. 1033 (2014) .............................................................. 9

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015) ...................................................9

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
723 F.3d 1363 (Fed. Cir. 2013).................................9

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir.1989).....................................3

**Statutes**

28 U.S.C. § 1450.................................................6, 7

28 U.S.C. §§ 1331, 1441.......................................11

**Rules**

Del. Super. Ct. Civ. R. 12(b) ...............................6

Del. Super. Ct. Civ. R. 26 ....................................6

Fed. R. App. P. 41(d)(1) .......................................2

Fed. R. App. P. 27(d)(1)(E) ................................20

Fed. R. App. P. 27(d)(2)(A) ................................20

Fed. R. Civ. P. 26 ..................................................6

Fed. R. Civ. P. 12(b)..............................................6

N.J. Ct. R. 4:10.......................................................6

U.S. Sup. Ct. R. 10..............................................15

**Other Authorities**

15A Charles Alan Wright & Arthur R. Miller, Federal Practice &
Procedure § 3914.11.1 (3d ed. Sept. 2022 update) ................................6

*An Empirical Analysis of Supreme Court Certiorari Petition
Procedures: The Call for Response and the Call for the Views of the
Solicitor General*,
16 Geo. Mason L. Rev. 237 (2009) ...........................14, 15, 16

# INTRODUCTION

Appellants' Motion to Stay the Mandate ("Motion") repeats the same arguments and the same authorities they relied on in their merits briefing, and in their petition for rehearing *en banc*, and asks the Court to even further delay these cases returning to the state courts while Appellants petition for certiorari. Doc. 143.[1] But as this Court has already held, there is no split of circuit authority concerning any of the issues the Court decided—the Plaintiffs-Appellees' claims here do not arise under federal law and are not removable from state court on any of the jurisdictional bases Appellants asserted. There is likewise no meaningful likelihood that the Supreme Court will grant certiorari, and no meaningful possibility that it will reverse. Most importantly, Appellants have not even attempted to show that they will likely suffer irreparable harm absent a stay, which is an essential element of their request. When the mandate issues, these cases will return to their respective state courts and begin merits proceedings. The fact of litigation *per se* cannot constitute irreparable harm, and Appellants do not seriously contend otherwise. The Motion must be denied, consistent with this Court's

---

[1] ECF references are to the *Hoboken* docket, No. 21-2728.

normal practice, 3d Cir. I.O.P. 10.8.2 (2018), and the cases must at long last be allowed to proceed.

## LEGAL STANDARDS

An applicant moving for stay of mandate pending a petition for certiorari "bears a heavy burden." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers). The motion "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). In turn, "[t]his standard requires the movant to show: (1) a reasonable probability that the Supreme Court will grant *certiorari*; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a likelihood of irreparable injury absent a stay." *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007); *accord Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam) (citation omitted); *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers) (citation omitted). Under this Court's Internal Operating Procedures, the movant generally must show they will suffer real, substantive harm unless a stay is granted:

> Inasmuch as a stay of mandate is ordinarily not a requirement for filing a petition for a writ of certiorari, it is the practice of this court not to grant a motion for stay

of the mandate or to recall the mandate unless the failure
to grant a stay affects a substantive right of the applicant.

3d Cir. I.O.P. 10.8.2 (2018).

## ARGUMENT

### I.    There Is No Good Cause for a Stay Because Appellants Have Not Shown or Attempted to Show They Will Likely Suffer Irreparable Harm Absent Staying the Mandate.

Appellants' Motion must be denied because they have not shown,
or even seriously attempted to show, that they will likely suffer
irreparable harm absent a stay. "An applicant's likelihood of success on
the merits need not be considered . . . if the applicant fails to show
irreparable injury from the denial of the stay." *Ruckelshaus v. Monsanto
Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., in chambers) (citation
omitted). Appellants here have not come close to establishing irreparable
harm, and the Motion can be denied on that basis alone.

The principles governing "irreparable harm" are well-understood.
"To establish irreparable harm, a stay movant 'must demonstrate an
injury that is neither remote nor speculative, but actual and imminent.'"
*In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (quoting *Tucker
Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989)).
"The possibility that adequate compensatory or other corrective relief will

be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson*, 415 U.S. at 90 (citation omitted). More to the point, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1381 (Fed. Cir. 2020) (same); *City & Cnty. of Honolulu v. Sunoco LP*, No. 21-15313, 2021 WL 1017392, at *1 (9th Cir. Mar. 13, 2021) (denying stay in related climate-deception case because "increased litigation burdens . . . do not rise to the level of irreparable harm"); *Nara*, 494 F.3d at 1133 (denying stay because the litigation burdens of "preparing to commence trial within 120 days while simultaneously filing a petition for *certiorari*" do not constitute "an 'irreparable injury'").

Appellants do not argue that they will suffer any harm at all absent a stay, let alone irreparable harm. They say, at most, that if the Supreme Court accepts certiorari and reverses, they "*could* be forced to litigate" in

New Jersey and Delaware state courts, "which *could* entail resolving numerous threshold and dispositive motions, as well as potentially extensive discovery . . . in the wrong forums and under the wrong laws." Mot. at 9 (emphasis added). Appellants ignore the irony that it is Plaintiffs-Appellees who have been forced into two years of delay by Appellants in what the District Court, this Court, and sister Circuits have consistently held is the wrong forum. Regardless, even accepting Appellants' argument on its face, it does not show irreparable harm for multiple reasons. Instead, it equates to only the possibility of "[m]ere litigation expense," which does not meet the required standard. *Renegotiation Bd.*, 415 U.S. at 24.

First, it is unlikely in the extreme that "numerous threshold and dispositive motions" and "extensive discovery" will occur in the state courts before certiorari proceedings conclude. *See* Mot. at 9. Assuming Appellants' petition is granted, the Supreme Court will likely rule this term, within the next eight or nine months. Given the pace of the litigation to date—largely attributable to Defendants' delay tactics—the state courts might at most resolve motions to dismiss in that time. In any event, Appellants do not identify any substantive right that will be

affected if motions to dismiss and early discovery proceed in state court, let alone any non-speculative injury they will suffer. Litigation in state court—where the Court has ruled these cases belong—is not a harm. State courts are presumptively competent to hear cases that come before them, and "as important as it is to make correct decisions about matters of federal jurisdiction and even removal procedure, trial in state court is not a horrible fate." 15A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3914.11.1 (3d ed. Sept. 2022 update).

Second, it is equally speculative that the parties and the courts will need "to start over from scratch" if this case ultimately returns to the federal system. Mot. at 9. State procedural rules surrounding motion practice and discovery are similar to their federal analogues. *Compare, e.g.*, Fed. R. Civ. P. 12(b), *with* Del. Super. Ct. Civ. R. 12(b), *and* N.J. Ct. R. P. 4:6-2; *compare* Fed. R. Civ. P. 26, *with* Del. Super. Ct. Civ. R. 26, *and* N.J. Ct. R. 4:10. And if the case is later transferred to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Thus, "once a case has been removed to federal court, it is settled that federal rather than state

law governs the future course of proceedings, notwithstanding state court orders issued prior to removal," and "Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal," the same way a district court may reconsider any other interlocutory order. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 437 (1974). After removal, any motion briefing, discovery requests, and depositions that had previously occurred in state court would simply be incorporated into the federal case or, at most, slightly adjusted to account for small procedural differences. Removing a case to federal court after some litigation has taken place in the state system is not a novel occurrence, and there is no reason to believe all state court proceedings will be wasted if remand is eventually reversed—there is even less reason to believe Appellants will be irreparably harmed.

Third, Appellants' complaint that remand would require them to litigate "in two different state-court systems . . . under two separate bodies of state law" is illusory. Mot. at 9. Prior to appeal, the *Hoboken* and *Delaware* matters were proceeding in the District of New Jersey and

the District of Delaware respectively, and there is no reason to believe they would be consolidated if they remain in federal court. Appellants will have to litigate these two different cases in two different states whether or not the cases are remanded.

Appellants' motion ultimately does not describe anything resembling likely irreparable harm. Appellants do not even use the words "irreparable harm" in their brief, except to argue that *Plaintiffs-Appellees* will not suffer irreparable harm if a stay is *granted*, because Delaware and Hoboken do not seek injunctive relief. Mot. at 9–10. That is a red herring; Plaintiffs-Appellees are not required to show they will be irreparably harmed if the mandate is stayed. Even "[i]n a close case," which this is not, "the *movant* should make a showing that, on balance, the interests of the parties and the public favor a stay." *Nara*, 494 F.3d at 1133 (emphasis added). Whether a stay will cause Delaware and Hoboken irreparable harm is entirely irrelevant.

Appellants' failure to demonstrate likely irreparable harm is fatal to their Motion. In fact, if the showing is not made, a stay of mandate is inappropriate even where the Supreme Court has *already granted* the movant's certiorari petition. Chief Justice Roberts' order denying a stay

in *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301 (2014), is instructive. The applicant there, Teva Pharmaceuticals, sought certiorari review of a patent decision, and applied to the Supreme Court to recall and stay the Federal Circuit's mandate. *See generally Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363 (Fed. Cir. 2013). Chief Justice Roberts, acting as Circuit Justice, held that Teva had "of course satisfied the first requirement," because the Court had granted Teva's certiorari petition two weeks prior. 572 U.S. at 1301; *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1033 (2014) (granting certiorari). The Chief Justice also held that Teva had "shown a fair prospect of success on the merits." 572 U.S. at 1301. Indeed, the Court ultimately sided with Teva and vacated the Federal Circuit's decision. *See generally Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015). Chief Justice Roberts nonetheless denied a stay of the mandate while the Court considered the merits, because he was "not convinced" that that Teva "ha[d] shown likelihood of irreparable harm from denial of a stay." 572 U.S. at 1301. The Chief Justice held that "should Teva prevail in this Court and its patent be held valid, Teva will be able to recover damages from respondents for past patent infringement," and

9

"[g]iven the availability of that remedy, the extraordinary relief that Teva seeks is unwarranted." *Id.* at 1301–02.

The same straightforward analysis from *Teva* applies here. Whether or not Appellants will successfully petition for certiorari, and whether or not they will eventually prevail in the Supreme Court on the merits, is irrelevant because they will not suffer irreparable harm absent a stay. The Court's consideration can end there.

## II.    There Is No Substantial Issue Because Appellants Are Not Likely to Succeed in Their Certiorari Petition or on the Merits Before the Supreme Court.

### A.    Appellants' Purported Split Among Circuits Is Illusory.

Even if Appellants could show any likely irreparable harm, their Motion should still be denied because Appellants have not shown "a reasonable probability that the Supreme Court will grant *certiorari*" or "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment." *Nara*, 494 F.3d at 1133. There is no circuit split on any of the questions the Court considered, and the unanimous decisions of the circuits are entirely consistent with Supreme Court precedent.

Appellants say there is "an entrenched circuit split," Mot. at 1, concerning "whether defendants can remove to federal court nominally state-law claims that, because of our constitutional structure, are necessarily and exclusively governed by federal law alone," *id.* at 4. That is not true. The Court's opinion noted that in 2022 alone, "four other circuits have refused to allow the oil companies to remove similar state tort suits to federal court," and "agree[d] with [its] sister circuits" that Hoboken's and Delaware's lawsuits are not "inherently federal" and do not arise under federal law for purposes of 28 U.S.C. §§ 1331, 1441. *See* Op. at 21; *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53–56 (1st Cir. 2022); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 199–208, 238 (4th Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106–13 (9th Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746–48 (9th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1257–61 (10th Cir. 2022). All circuits that have considered the question are in accord.

Appellants say those holdings conflict with older opinions which "recognized that federal common law provides a ground for federal removal jurisdiction even if the claims were nominally pleaded under

state law." Mot. at 4 (citing, *inter alia*, *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926 (5th Cir. 1997)). As Delaware explained at length in this appeal, those decisions all predate *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*, 545 U.S. 308 (2005), in which the Supreme Court expressly sought to "bring some order to th[e] unruly doctrine" governing when state law claims arise under federal law for jurisdictional purposes, *see Gunn v. Minton*, 568 U.S. 251, 258 (2013). This Court correctly recognized that the outdated decisions Appellants rely on are "outliers" that "most courts recognize . . . are not good law." Op. at 25. Tellingly, Appellants do not mention *New SD, Inc. v. Rockwell International Corp.*, 79 F.3d 953 (9th Cir. 1996), in support of their supposed circuit split, despite relying on the case in their merits briefing. That is likely because, notwithstanding *New SD*, the Ninth Circuit reached the exact same conclusions as this Court in both *City of Oakland v. BP PLC*, 969 F.3d 895, 904–05 (9th Cir. 2020), and *San Mateo*, 32 F.4th at 746–48, that federal common law did not provide an independent basis for removal jurisdiction. To the extent *New SD* remains good law, it does not conflict with the decision here, in light of *Oakland* and *San Mateo*.

The essence of Appellants' argument is that this Court's opinion—and the consistent decisions of the First, Fourth, Ninth, and Tenth Circuits—conflicts with *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021). Mot. at 5–6. That assertion, however, is flatly contradicted by the opinions of this Court and of the Second Circuit. As the Court held, there is no conflict because "that case involved another ordinary-preemption defense to a case first filed in federal court" and did not consider federal subject-matter jurisdiction at all, let alone jurisdiction over removed state law claims. Op. at 24. Similarly, the Second Circuit itself stated that the "fleet of cases" rejecting removal jurisdiction on similar facts "does not conflict with our holding." *City of New York*, 993 F.3d at 94; *see also Baltimore*, 31 F.4th at 203 ("*City of New York* was in a completely different procedural posture" and "never addressed its own subject-matter jurisdiction"); *Boulder*, 25 F.4th at 1262 ("[T]he issues before the district court and the circuit [in *City of New York*] were not within the context of removal."); *Rhode Island*, 35 F.4th at 55 ("There, unlike here, the government 'filed suit in *federal court* in the *first instance*' (relying on diversity jurisdiction)."). None of the relevant decisions conflict with *City of New York*, and Appellants' assertion to the

contrary is, at best, in direct tension with the plain language of *City of New York*.

### B. The Supreme Court's Recent Request to the Solicitor General for the Views of the United States Does Not Help Appellants.

Finally, Appellants separately argue that because the Supreme Court called for the views of the Solicitor General on the pending certiorari petition from the Tenth Circuit's decision in the *Boulder* case, there is a "substantial" question presented. *See* Doc. 144 at 1; *Suncor Energy (U.S.A.) Inc. v. Board of County Commissioners of Boulder County*, No. 21-1550 (U.S.) (Oct. 3, 2022). The Court's recent request to the Solicitor General in the *Boulder* petition does not support staying the mandate for at least four reasons.

First, even according to the outdated empirical analyses on which Appellants rely, the Supreme Court grants certiorari petitions in only about one third of the cases in which it seeks the views of the Solicitor General, and those analyses say nothing about the likelihood of granting a petition where, as here, the circuits are in unison on the merits. *See* David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and*

*the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 295 (2009) (analyzing data from 1998 to 2004). The mere fact that the Court solicited the United States' position does not, on its own, show "a reasonable probability that the Supreme Court will grant *certiorari*." *Nara*, 494 F.3d at 1133; *see also Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J., in chambers) (The Supreme Court's request for the Solicitor General's views "is hardly dispositive of an application to block implementation of a Court of Appeals' judgment."). Indeed, where the Solicitor General recommends denial of the petition for certiorari, as is likely here in light of the unanimity among the circuits, the Court is highly likely to deny the petition. Thompson & Wachtell, *supra* 14, at 276 (reporting the Supreme "Court denied 80% of the petitions" in which the Solicitor General recommended denial).

Second, Appellants assume that the Solicitor General will recommend granting certiorari review in *Boulder* based on past *amicus* briefs filed in other cases. But that assumption is unfounded. The United States has never taken a position on the certworthiness of Appellants' novel federal-common-law theory of removal. *See* U.S. Sup. Ct. R. 10 (outlining the main factors considered by the Supreme Court in granting

or denying certiorari review). In any event, the Solicitor General is free to revisit and modify previous positions taken by the United States as *amicus curiae. See* Doc. 144 at 1 (citing *amicus* briefs filed in 2020). Here, in the past year alone, five circuits have unanimously ruled against Appellants on the question presented in the *Boulder* petition; the Solicitor General has ample reason to take a fresh look at the issue.

Third, even if the Solicitor General were to recommend granting certiorari review of the *Boulder* petition, and even if the Solicitor General were to further recommend reversing the appellate court's judgment (two big "ifs"), those recommendations would offer little insight into how the Supreme Court might ultimately rule on the merits of the petition. Indeed, the empirical analyses cited by Appellants confirm as much, showing that "[t]he Court's ultimate decision on the merits is only loosely correlated with the [Solicitor General]'s recommendation on the outcome at the petition stage." Thompson & Wachtell, *supra* 14, at 278. As a result, soliciting the position of the United States does not, standing alone, indicate "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment"—the second requirement of a stay. *Nara*, 494 F.3d at 1133.

Fourth, and most importantly, Appellants still have not shown and cannot show likely irreparable harm. Even if the Supreme Court's action in the *Boulder* matter indicated with certainty that a grant of certiorari is likely in this case, that still would not satisfy Appellants' burden and would not justify a stay of the mandate. *See Conkright*, 556 U.S. at 1403 (denying  motion for stay because, even though the Supreme Court had called for the Solicitor General's views on the pending petition for certiorari, movant had not shown irreparable harm); *de Csepel v. Hungary*, Civ. No.10-1261 (JDB), 2022 WL 3026998, at *3, 5 (D.D.C. Aug. 1, 2022) (similar); *see also Teva Pharmaceuticals*, 572 U.S. at 1301–02 (refusing to stay the mandate even though the Supreme Court had already granted certiorari review).

## CONCLUSION

Appellants have failed to meet their burden. Appellants will not suffer irreparable harm if the Court's mandate issues, and there is no meaningful likelihood that the Supreme Court will either grant Appellants' petition for certiorari or reverse. The Motion to Stay the Mandate should be denied, and these cases should at long last be allowed to proceed in state court, where they belong.

Respectfully submitted,

Dated: October 11, 2022

**Delaware Department of Justice**

*/s/ Christian Douglas Wright*
Christian Douglas Wright
   Director of Impact Litigation
Jameson A.L. Tweedie
Ralph K. Durstein III
   Deputy Attorneys General
820 N. French Street
Wilmington, DE 19801
 (302) 683-8899
christian.wright@delaware.gov
jameson.tweedie@delaware.gov
ralph.durstein@delaware.gov

**Sher Edling LLP**

Victor M. Sher
Matthew K. Edling
Stephanie D. Biehl
Martin D. Quiñones
100 Montgomery Street, Suite 1410
San Francisco, CA 94014
(628) 231-2500
vic@sheredling.com
matt@sheredling.com
stephanie@sheredling.com
marty@sheredling.com

*Counsel for Plaintiff-Appellee State of
Delaware in 22-1096*

**Emery Celli Brinckerhoff Abady
Ward & Maazel LLP**

Jonathan S. Abady

Matthew D. Brinckerhoff
Max Selver
600 Fifth Ave., 10th Fl.
New York, NY 10020
(212) 763-5000
jabady@ecbawm.com
mbrinckerhoff@ecbawm.com
mselver@ecbawm.com

**Krovatin Nau LLC**

Gerald Krovatin
60 Park Place, Suite 1100
Newark, NJ 07102
(973) 424-9777
gkrovatin@krovatin.com

*Counsel for Plaintiff-Appellee*
*City of Hoboken in 21-2728*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,596 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.    This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

3.    This brief complies with this Court's Rule 28.3(d) because at least one of the attorneys whose names appear on the brief, including Victor M. Sher, is a member of the bar of this Court.

4.    This brief complies with this Court's Rule 31.1(c) because: (1) the text of the electronic brief is identical to the text in the paper document, and (2) the document has been scanned with Sophos Intercept X with EDR version 2.0.24 and is free of viruses.

Dated: October 11, 2022        /s/ *Victor M. Sher*
                                                    Victor M. Sher
                                                    Sher Edling LLP
                                                    100 Montgomery St., Ste. 1410
                                                    San Francisco, CA 94104

# CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: October 11, 2022        /s/ *Victor M. Sher*
                               Victor M. Sher
                               Sher Edling LLP
                               100 Montgomery St., Ste. 1410
                               San Francisco, CA 94104